LOUISVILLE, NASHVILLE & GREAT SOUTHERN RAIL-
ROAD COMPANY v. PATRICK GUINAN.

1. RAILROADS. *Purchase of tickets. Evidence.* In an action by a passenger against a railroad company for wrongfully putting him off the train for failing to pay the fare demanded, it is competent to prove by himself and other witnesses that they had traveled over the road between the termini of the plaintiff's trip, with and without tickets, and never paid more than the plaintiff tendered to the conductors.

2. SAME. *Regulation about tickets.* A railroad company may, by a regulation of which the public are duly notified, establish a higher rate of fare if paid on the cars than in the purchase of a ticket for the same trip, but the fare can in no event exceed the charge limited by the charter.

3. SAME. *Damages.* Actual compensation is the measure of damages in all instances in which the nature of the case admits of the rule.

4. SAME. *Same. Exemplary.* Exemplary damages are allowed when the wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligations, or where there is negligence so gross as to amount to positive misconduct. The turpitude of the defendant's conduct is alone considered, and there must be a wrong intent on his part, or the wrongful execution of a *bona fide* intent.

5. SAME. *Same. Same. Removing passenger from train ·for non-payment of fare.* Where, therefore, a passenger was removed from the car of a railroad company for the non-payment of the fare demanded by the conductor, acting in good faith and under instructions from the company, in a peaceable manner, without any improper conduct on the part of the conductor, the passenger would not be entitled to exemplary damages unless the act was done with a malicious intent on the part of the company or its employees to defraud or oppress the defendant, or passengers in his situation.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt.    J. T. CARTHEL, J.

McFARLAND & BOBBITT for Railroad.

H. T. JOHNSON & BRO. for Guinan.

COOPER, J., delivered the opinion of the court.

Guinan sued the railroad company for wrongfully ejecting him, being a passenger, from the company's train of cars. The jury found a verdict in his favor for $250, and the company appealed in error.

Guinan got on the train at Milan to go to Humboldt, without buying a ticket. The price of a ticket between these points was fifty-five cents. When the conductor went through the train to take up the tickets of the passengers, Guinan tendered him fifty-five cents in silver. The conductor declined to take the money, telling Guinan that the fare required to be paid on the train was sixty cents. Guinan refused to pay any more, insisting that the amount tendered was the usual fare. The conductor said he was acting under orders of the company to collect sixty cents of passengers who did not buy tickets, and if Guinan did not pay that sum he would put him off the train at the next station. Guinan replied that before he would pay any more the conductor might put him off, but if he did, he (Guinan) would see a lawyer about it. The next station was at a point midway between Milan and Humboldt. When the train stopped at the station the conductor told Guinan that he must get off, and he did so. He was "crippled and lame" in one foot and leg, but immediately started along the road for Humboldt. The

day was warm, and he stopped to rest two or three times. After walking about three miles he was taken up by a hand-car and carried within a mile of Humboldt.

The weight of evidence is, that the distance between Milan and Humboldt by the railroad was about eleven miles, as indicated by the mile-posts of the railroad company. One witness, who had measured the distance with a tape-line for the purpose of erecting a telegraph line, states that the distance was 435 yards in excess of eleven miles. The plaintiff introduced evidence tending to show that the usual fare charged and paid between these points, with or without a ticket, was fifty-five cents. . The plaintiff testified that he had traveled over the road between those points for six or seven years, sometimes with and sometimes without a ticket, and had never paid over fifty-five cents. Other witnesses testified to the same effect. The testimony was objected to by the company, but was clearly competent to show that Guinan was acting in good faith, and had reason to suppose that the fare would be the same whether he bought a ticket or not. The company might have proved, if the fact had been so, that it had established a rule, of which the public were properly notified, that the fare between the points would be more on the cars than for a ticket. Such a regulation, within the limitations of the charge by the charter of the company, would have been good: *Lane* v. *E. T. & Va. R. R. Co.,* 5 Lea, 124. No such proof was made, and the evidence, moreover, as we

have seen, tended to show that the distance between the points was only about eleven miles, and that therefore no more than fifty-five or fifty-six cents could be charged in any event, the charter of the company limiting the charge for carrying passengers to five cents a mile. The charge of the trial judge to the jury on this branch of the case is not excepted to, and the verdict in favor of the plaintiff that he was wrongfully put off the train was well warranted by the testimony, either upon the ground that the company could not charge sixty cents for the distance between the termini of the trip, or upon the ground that the plaintiff had good reason to believe that the charge would only be fifty-five cents, with or without a ticket.

The only ground of real contest in the case grows out of the rulings of the court in relation to exemplary damages. After explaining to the jury what are compensatory damages, his Honor said: ".There may be exemplary damages, or smart money as it is called, and the object of this kind of damages is not so much to compensate the injured party as to punish the party inflicting the wrong, and to promote the interest of the community and do justice at the same time to the injured party. But exemplary damages are not given for every wrong done, and are not allowed in any case unless the injury done is wanton and oppressive, and whether the injury is wanton and oppressive is for the jury to decide from all the facts and circumstances attending it, considering the time, place and manner, and all of the circumstances. An

act may be wanton or oppressive although done in a quiet and gentlemanly manner, or it may not be so; for each case depends upon its own special facts." His Honor added: "The plaintiff is not entitled to damages simply because he is a cripple, and you can only look to that to see what inconvenience and expense he was put to, if any, on that account."

The company requested his Honor to give the following additional charge, which he refused to do: "If no force was used in ejecting Guinan from the cars, and no insulting language used to him or insult offered him, and he got off merely at the words of the conductor that he would have to put him off, and the conductor acted towards him all the time in a peaceable and kind way, and in good faith, then plaintiff can only recover actual damages, and cannot recover exemplary damages."

The jury, after being out some hours, returned into court, and asked the judge to charge them again as to punitive and vindictive damages. His Honor said to them: "If the act was wanton and oppressive, they might give vindictive damages, and to ascertain whether the act was so, they might look to the time and place when and where put off, the crippled condition of the plaintiff," etc. One of the jury asked if the act could be wanton and oppressive when there was no force used or abusive words. The judge replied: "That an act might be oppressive when it was done in a kind, pleasant and polite manner. It would depend on all the attending circumstances, and it was for the jury to find how that was."

In cases growing out of the non-performance of contracts or of duties imposed by law, or arising from the violation of rights, in which there is no element of fraud, oppression, willful negligence or malice, the wrongdoer acting under a mistaken idea of his own rights and in good faith, the compensation to which the injured party is entitled as damages consists only of the direct pecuniary loss. Where fraud, malice, gross negligence or oppression intervenes, the law blends the interest of society and of the aggrieved individual, and gives damages such as will operate as an example or warning to the party or others to deter them from similar transactions: *Dougherty* v. *Shown*, 1 Heis., 302; *Railroad Co.* v. *Garrett*, 8 Lea, 439; *Cox* v. *Crumley*, 5 Lea, 529. Actual compensation is the measure of damages in all instances where the nature of the case admits of the rule: *Nashville & Chattanooga Railroad Co.* v. *Smith*, 6 Heis., 174. To entitle the injured party to exemplary damages there must be aggravating circumstances, and the turpitude of the defendant's conduct is alone considered. Exemplary damages are allowed when a wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligations; or where there is negligence so gross as to amount to positive misconduct: 1 Suth. on Dam., 723; Sedgw. on Dam., 33. If a person act under a mistaken sense of duty, and without any intention of oppression, it is a case for compensatory not exemplary damages: *Wiggin* v. *Coffin* 3 Sto., 1. There need not be positive proof of

Railroad *v.* Guinan.

malice or oppression, if the transaction, or the facts shown in connection therewith, fairly imply its existence: *Magee* v. *Holland,* 3 Dutch., 86. And it is left to the jury to look at all the circumstances in order to see whether there was anything in the conduct of the defendant to aggravate the damages: *Johnson* v. *Perry,* 2 Hum., 569; *Byram* v. *McGuire,* 3 Head, 530.

In the case before us, the jury were warranted in finding that the plaintiff was wrongfully removed from the cars, but he was removed without any violence or indignity, and at a regular station on the road. The conductor, so far as appears, acted in good faith in obedience to instructions from his company. The plaintiff reached his destination without expense, within an hour or two of the time by rail, walking two or three miles. And he voluntarily preferred to take this course rather than pay five cents, which he might have recovered by law if illegally taken. The record does present a case of grave doubt as to the right to exemplary damages, and the jury manifestly thought so when they applied to his honor for further instructions. Under these circumstances, the charge should have been full, clear and accurate on the point of difficulty. The charge, in fact, ignores the real difficulty. That difficulty was in finding any of the grounds for exemplary damages in fraud, malice, oppression or gross negligence in either the conduct of the railroad company or the conductor. And the charge gives no aid to the jury in this regard, while the charge in reply

to the request of the jury misleads them in one respect in which the original charge was correct, namely, the crippled condition of the plaintiff. That was a consideration for compensatory not exemplary damages.

In ascertaining whether the plaintiff is entitled to exemplary damages, "the turpitude of the defendant's conduct is alone considered": 1 Suth. on Dam., 723. The fraud, malice, gross negligence or oppression, which aggravates the damages, must exist on the part of the defendant, or, if the defendant be a corporation, on the part of its officers. If the defendant, in good faith act under a mistaken sense of duty, or erroneous belief of right, without any intention to oppress or defraud. or without any actual oppression or indignity, the case is one for compensatory, not exemplary damages. If what is done be done with a fraudulent, malicious or oppressive intent on the part of the wrong-doer, there would be ground for exemplary damages, although, to use the language of the trial judge in his charge, "the act be done in a quiet and gentlemanly way." So, on the other hand, although there be neither malice nor fraud, nor intent to oppress on the part of the wrong-doer, yet if the act be done in a rude, insulting or reckless manner, in disregard of social obligations, or with such gross negligence as to amount to positive misconduct, there would be ground for exemplary damages. There must be a wrong intent or a wrongful execution of an honest intent.

In the case before us, the mode of removing

Guinan from the cars seems to have been entirely unexceptionable, and the conductor almost certainly acted in good faith and under instructions from the company. And the defendant was entitled to have the jury instructed that if they so found, the case was not one, so far as the acts of the conductor were concerned, for exemplary damages. So, when the jury asked if the act could be wanton and oppressive when there was no force used or abusive words, his Honor should have told them that the act would not be wanton and oppressive unless done with a malicious intent on the part of the company or the conductor to defraud or oppress the defendant, or passengers in his situation.

The judgment will be reversed, and the cause remanded for another trial.