JOHN TOOMEY, Receiver for THOMAS HALL LUMBER CO. v.
MARSHAL GOAD, Administrator.

Eastern Section.  February 11, 1928.

E. G. Foster, of Huntsville, and Fowler & Fowler, of Knoxville, for plaintiff in error.

H. K. Pemberton and W. M. York, both of Huntsville, and Anderson & Word, of Knoxville, for defendant in error.

SNODGRASS, J. Marshal Goad, administrator of his deceased son, Aaron Goad, recovered a judgment against the plaintiff in error in the sum of $5,000 for the wrongful killing of his said son, a young man twenty-five years of age and unmarried.

The declaration averred that John Toomey, as receiver of the Thomas Hall Lumber Company, a corporation, was on or about October 10, 1924, operating a steam railroad extending from New River, a point in Scott county, to a point known as Little Creek, near Courtland, Tennessee, employing in the operation of said railroad numerous servants, who operated thereover a steam locomotive and railroad cars, transporting timber and other products along and over said railroad, and, substantially, that while so operating on said date defendant wrongfully, negligently and carelessly ran his said engine and cars upon and against plaintiff's said intestate, the said Aaron Goad, bruising, wounding and fatally injuring him, from the results of which injuries it was alleged said Aaron Goad then and there died; that the said engine and train of cars of the defendant were driven and propelled upon and against the body of the deceased Aaron Goad at and near a point where the public road running from Robbins to Huntsville in Scott county crosses said railroad track, and about the date herein above stated; that said Aaron Goad left surviving him his father, Marshal Goad, for whose use and benefit suit was brought, and a jury was demanded to try the issues.

A demurrer was filed to the déclaration, and overruled, but as no appeal therefrom was taken, nor any error predicated upon the action of the court thereon, it is not further noticed.

There was a plea of not guilty filed, and upon the issues thus determined the case was submitted to the jury, resulting in a verdict in favor of the plaintiff and fixing his damages in the sum of $5,000, for which judgment was rendered.

It is proper to say that at the close of the testimony, as appears from the bill of exceptions, defendant's counsel made application to the court as follows:

"I move your Honor to peremptorily instruct the jury to return a verdict in favor of the defendant in this case."

To which the court responded as follows:

"Above motion is by the court overruled, to which action in overruling said motion defendant excepted."

The defendant made a motion for a new trial, which was overruled, and, perfecting an appeal therefrom to this court, he has made assignments of error that—

"I. The court erred in not sustaining defendant's motion for peremptory instructions for a verdict in his favor, because no evidence was introduced upon which a verdict in favor of plaintiff could rest.

"II. The court erred in not sustaining the motion for a new trial, because no material evidence was introduced to support the verdict of the jury."

"III. The court erred in not charging the jury as requested in the first proposition, to-wit:" (setting out the request).

The fourth, fifth, sixth, seventh and eighth assignments are predicated on a similar refusal of the court to charge other special requests, which were set out in the assignments with regard to each. These special requests were numbered consecutively as indicated in the court's action, and so incorporated in the motion for a new trial, coupled with a signed statement of the court's action thereon, as follows:

"Requests numbers 1, 2, 3, 4, 5 and 6 are substantially covered in the general charge, and are refused to be given to the jury. W. H. Buttram, Judge."

This statement identifies these requests, and thus appearing upon the minutes each are a part of the technical record, and would be sufficient to evidence their presentation and refusal, if it appeared thereby or otherwise that they were seasonably presented.

"IX. The court erred in not setting the verdict of the jury aside, because it was so grossly excessive as to evidence passion and prejudice upon the part of the jury."

"X. The court erred in permitting a verdict of $5,000 to stand, and in pronouncing a judgment against the defendant for more than $500, as, if the deceased was killed by defendant's engine, his own gross negligence or willful intention to commit suicide was the direct and immediate cause of his death."

Disposing of the questions made as to the special requests first. As indicated, we think both the technical record and the bill of exceptions show that the special requests set out in the assignments in relation thereto were at some time made to the court and refused, the court indicating that they were substantially covered in the general charge. Whether they had been handed to him before the general charge was prepared, and he had had them in the preparation of his charge substantially covering their main points, does not appear, nor does it appear sufficiently, we think, that if they had been in his hands, that they were again presented to him and he asked to charge them at the close of the general charge. And in the absence of any affirmative showing that the requests were made seasonably, or seasonably insisted upon if made before, the presumption would be to sustain the court's action and their refusal on that ground.

"Requests for further instructions must be presented after the general charge is delivered, or the court will commit no error in refusing to give them." Ency. Digest of Tenn. Reports, Vol. 7, page 237, and authorities there cited.

Also on the same page of the volume just cited:

"Special or additional instructions must be presented after, not before, the delivery of the original charge to the jury." Citing Chesapeake, etc., R. R. Co. v. Foster, 87 Tenn., 671, 13 S. W., 694, 14 S. W., 428.

"Although a party may at the commencement of the trial, after asking the judge to charge the jury in writing, pass to the judge specific instructions which he desires to have embodied in the charge, he cannot assign as error the omission of the judge to include some of these instructions in the charge, unless his attention be called to the omission after the charge has been delivered and he then requested to give them in charge." Roller v. Bachman, 5 Lea, 153.

The proof should negative every condition under which the presumption would obtain in favor of the propriety of the court's action, which should never be overturned by any construction of the evidence, or inference of fact, unless such inference of fact is such as must necessarily be indulged from other facts proven. Ordinarily, as insisted, a motion for a new trial is only evidence of what the mover insists was the fact, and not evidence of the truth of the insistence. Frazier v. The State, 117 Tenn., 430, 100 S. W., 94. But as indicated,

the motion for a new trial, contained also in the signed statement of the judge which it embodied, evidence that such requests had been presented and were refused. This motion therefore was not only a motion for a new trial, but embodied also a feature as a bill of exceptions, and presents the truth of the fact as well as the insistence. We therefore do not see why it cannot be looked to as a bill of exceptions also to that extent.

In the final order shown by the bill of exceptions proper, it is again recited that such requests were made and refused. Neither of these sources show, however, when the requests were made and refused. There is only the statement from which any inference might be drawn at all, to the effect that "the requests were covered substantially by the general charge and are refused to be given to the jury."

The court, we think, gave a more favorable charge than that requested in specification No. 1, assignment No. 3, in the following excerpt, which contained every essential element of the request:

"If you should find from the greater weight of the evidence that this deceased man was in such position that the said railroad company with ordinary care and diligence could not have seen him, but when seeing him that the railroad company used every possible means to stop the train and prevent accident, then and in that event the railroad company would not be responsible."

The request declined was as follows:

"Gentlemen of the jury, I instruct you that where there is a want of time to observe all the precautions, or if some of the precautions were under the particular circumstances more effective than others, then the company must first observe these precautions which from their nature are best calculated and most effectual under the circumstances to prevent the accident."

It was shown, if not admitted, that no whistle was sounded after the discovery of the deceased on the track, and it is contended that there was not time to apply the brakes and stop the train so as to prevent the accident thereafter; therefore if the deceased was asleep it might reasonably be supposed that only the cooperation of the deceased could save him, and that sharp blasts of the whistle might have aroused such cooperation if sounded in time, and this latter is the contention of the defendant in error. So that the court telling the jury under the circumstances, that if the plaintiff in error used every possible means to stop the train and prevent the accident, it certainly was as favorable as the request, and we cannot see that the defendant was prejudiced thereby.

There was no reversible error committed by the court in his refusal to give in charge the matter covered by the second request, assignment No. 4, to the effect:

"That if the deceased was killed by the railroad company not at a public crossing, and not at a place on the track where it was a universal and general custom of the people to use such tracks for footways, I instruct you that if you should find that to be the fact under the evidence, he was guilty of negligence as a matter of law."

If the request was an accurate statement of the law it is, or becomes, a mere abstraction, when considered in connection with the court's charge which covered the determining facts of the case as they existed under the statute. We think there could have been no liability at the common law for the death of one sitting without compulsion upon one of the rails of a railroad, in front of the approaching engine and cars, until he was run over by the same and killed, for he would be as much under the requirements of ordinary prudence, and under the facts of this case, to see the approach as they were to discover him. Besides, ordinarily, he might have heard the rumble of the train, while those upon the train could only see him. The court submitted the case under the statute as well, and charged the jury that if they "should find that this deceased was on the railroad track, and that his conduct contributed to his death, in that event the railroad company would not be as responsible in damages to the extent that it would be providing the deceased was in no way responsible for his death." And in another place they were told that if they "should find that the deceased was not without negligence in this case, if you should find from the proof in the case that he was guilty of more or less negligence, being upon the railroad track in front of the approaching engine and train, and that his negligence contributed to his death, then I instruct you in that case, it is your duty to consider carefully the extent of his negligence, and mitigate or reduce the amount of the recovery which his administrator would otherwise be entitled to, it being proper amount on account of negligence that deceased was guilty of contributing to his injury and death. Because, if he was guilty of any fault or negligence that contributed to his death, that negligence must be taken into account by the jury in reducing the amount which the administrator would otherwise have recovered had he not been guilty of any negligence."

With reference to this feature of the case the court said also to the jury: "It is the duty of every person to use reasonable care for his own protection and to avoid being injured, and by reasonable care is meant such care as a man of reason and prudence would be expected to use and observe for his own safety and protection.

He had previously stated to the jury "that when a person uses a railroad or roadbed as a walkway, then it is his duty to use all reasonable precaution to see if trains are approaching him in any direc-

tion, and to continue this act of precaution so long as he is on said track.''

Neither do we think the court was in error in refusing the fifth request indicated in the 5th assignment. After stating the case made by the declaration in his general charge as including the allegation that defendant below ''wrongfully, negligently and carelessly ran his said engine and cars upon and against the plaintiff's intestate, the said Aaron Goad, bruising and fatally wounding and injuring him, from the results of which injuries the said Aaron Goad then and there died,'' which of course was a part of the case, the court told the jury that the burden of making out the case by a preponderance of the proof rested upon the plaintiff, and that if when they came to consider the case they should decide that the evidence preponderates in favor of the defendant's plea of not guilty, or that the evidence is balanced so that you cannot tell on which side it preponderates, that then they would return a verdict in favor of the defendant. But that, ''if you should find that the evidence preponderates in favor of the plaintiff's intestate, and that the injuries complained of were the direct and proximate result of some one or more acts of negligence charged in the declaration, then your verdict will be in favor of the plaintiff.''

We think this sufficiently covered the case made in the proof, from which the jury could not have failed to understand that, if the deceased was already dead when the train struck him, that there could be no recovery.

The error complained of in the 6th assignment was with regard to a similar request. The proof was that the deceased was sitting on a rail of the road when the train struck him, and that his head was found severed from the body, evidently by the wheel running over his neck. Manifestly it would have been improper to tell the jury that ''if the deceased caused his own death by straightening out between the railroad rails, leaving his neck on the west rail of the track, and the engine ran over his neck (if it did pass over his neck), that the plaintiff cannot recover.''

There is no proof that before he was struck he so disposed himself on the track, even had that been sufficient under the statute to prevent a recovery. How his body might have been disposed of by the impact so as to effect the severance of the head by the wheels passing over his neck, is unimportant.

The request embodied in the 7th assignment, insofar as it was accurate, had been given to the jury. However, the request was inaccurate and improper, in that it took no account of any negligence which might be predicated in not discovering him earlier than they did, and eliminated any question of insufficient headlight, eyesight or lookout.

The request embodied in the 8th assignment could in this case apply alone to any question of common law negligence, and would not have been accurate as applied to statutory negligence.

We do not think, therefore, that there is any reversible error shown as affecting the merits of the case in the refusal of the circuit judge to give the alleged requests in charge, had they been seasonably offered.

It is insisted that the statute does not apply to this kind of a road or company; that it applies only to a railroad carrying freight or passengers for hire, and which has the right of eminent domain. But we think this insistence is too technical, and is untenable. The fact that it may have been a lumber company, or named as such, did not keep it from being a railroad company also, if it operated a railroad, which the proof shows it was and had been doing for something over two years, as described in the declaration. The statute applies to "every railroad company." We think it would be highly technical to say that such a company, if called a lumber company, though authorized to and operating a standard gauge railroad, with the usual facilities, would not be liable because it had so named itself after a feature of its business. Neither do the terms of the statute in relation to precautions in any way limit its application to a common carrier, or to a railroad having the right of eminent domain. The primary object of the statute was not to impose the obligation upon particular roads, or any particular places, but to secure as far as possible the safety of others in all places where railroads are operated. If danger of the character to be guarded against is or was liable to occur on this road, there is no substantial reason for the insistence that such precautions should not apply to it. The fact that its operation is fraught with such peril is indicated by its length, connections and purpose, and by the happening of the very accident under consideration.

Without regard to what courts in other states have determined upon statutes of possibly varying phraseology, or with different notions regarding public policy, we think our own court in the case of Stem v. Interurban Ry., 142 Tenn., 494, 221 S. W., 192, has laid down the rule of guidance determining the applicability of these statutes. In the syllabi it is said, that though the statutes are in derogation of the common law, they "are also remedial in character, and are therefore entitled to a construction which will not defeat the salutary purposes of their enactment." That "the rule that statutes changing the common law should be strictly construed is not invariable, and does not apply when its application would tend to impair the remedial nature of the statutes."

In applying the statutory precautions to the interurban electric railway, a line extending nine and three-tenths miles from Nashville to Franklin, only two and eight-tenths miles of which were within

the City of Nashville, they said the test of applicability was not the motive power used, but the real character, business and operation of the road, and whether the regulation was reasonably susceptible of application.

We think this railroad, shown to have switch connections with the Cincinnati Southern at New River, where it starts out to Brimstone, to the mouth of Mill Creek and Little Creek, and twelve or fourteen miles long, operated as it was in the hauling of logs and coal, passing near and crossing public roads and through a section near where people lived, can hardly be said to be altogether private and on private lands, even were that sufficient to relieve it under the statute. We are of opinion that these statutory precautions can be reasonably applied to it, and that its liability thereunder in this case could only be avoided (there being no question but what the deceased appeared in front of its moving train, near enough to be struck by it in passing before the accident happened) by showing by a preponderance of the proof that it observed all the statutory precautions, or such of them after reasonable discovery as were the best means within the time to employ to prevent the accident. Failing to do that a liability was established. There is sufficient proof to justify the jury's report of a liability. At the time of the accident there was a fireman and engineer on the train, but only the fireman was introduced, and that by the plaintiff. He did not see the deceased sitting on the track until they got within about a rail's length of him, being otherwise occupied at the time by firing. His attention, however, was called to him by the engineer when he was about one hundred feet away, and about the time the brakes were applied and the engine reversed, though no whistle or bell was sounded. The fireman testified that they were going toward New River; that there were eight log cars and caboose; that they were running ten or twelve miles an hour, and that only the engine passed over the deceased before they stopped, which would appear to have been something like one hundred feet after the brakes were applied. It appears, however, that with a headlight sufficient, and proper lookout, he might have been seen for over five hundred feet before he was struck; also that the engineer was one eyed, though he could see good with one eye. It appears that the engineer called the fireman's attention to the obstruction and wanted to know what it was, and then immediately applied the sand and brakes, reversing his engine. How long he had been contemplating the object before this does not appear.

Without further discussion of the proof we think it is sufficient to support a liability, but the same proof shows such gross and contributory negligence on the part of the deceased as should, we think, mitigate the damages more than the jury has allowed. For if the deceased were either asleep or in a drunken stupor, it was the grossest

negligence to park himself upon the track and remain there as he did, and there is an utter absence of any proof that would explain his presence there as due to blameless misfortune upon his part. It has been a serious question as to whether the damages recovered should have been allowed to go beyond nominal, or further than a wholesome penalty for the negligence of the lookout, or in using the kind of equipment that was shown—a weak light on one side of the engine, with a cowcatcher described as "a few boards across there"—when as is commonly known cowcatchers on railroad engines project above the rails and to a V-shaped point in front, designed or calculated to throw obstructions to one side, which, if it had been employed in this instance, might have thrown the deceased from the track without killing him.

At any rate we think the judgment under the circumstances excessive, and under the assignment of error to this effect we shall reverse the case and grant a new trial, unless the defendant in error will enter a remittitur so as to reduce the judgment to $2,000; but upon so doing all assignments of error will be overruled, as upon the whole and under the statute we do not think there is any reversible error in the charge affecting the merits of the case.

It is not necessary to pass upon the question as to whether or not defendant is entitled under a showing to make the question that the court erred in refusing to direct a verdict, as, if it should be regarded as made, it has been disposed of in our finding that there is evidence to support the verdict, and that therefore such verdict should not have been directed.

If the remittitur is made a judgment will be entered here affirming the lower court at the sum of $2,000, with costs against appellant, otherwise the case will be reversed, with costs against appellee.

Portrum and Thompson, JJ., concur.