GILBERT L. COHEN, Theodore H. Pailet, Albert G. Morris, and Evergreen Land Company, Inc., dba, Americana Apartments, Defendants-Appellants, v. JAMES G. COOK, Ray Gill, and Terry Gilley, Plaintiffs-Appellees. —462 S.W.2d 502.

Middle Section. January 14, 1969.

Certiorari Denied by Supreme Court August 1, 1969.

294

296

R. B. Parker, Jr., Nashville, for plaintiffs in error.

Wm. F. Burton, Jr., John M. Thrower, Nashville, for defendants in error.

TODD, J. These appeals in error are by Gilbert Cohen, Theodore H. Pailet, Albert G. Morris and Evergreen Land Company, Inc., defendants, against whom verdicts and judgments were rendered in favor of each of the plaintiffs, James Cook, Ray Gill and Terry Gilley, for $5,000.00 compensatory and $3,000.00 punitive damages in separate suits for malicious prosecution.

The three suits are the aftermath of a new years eve party on December 31, 1965 in the basement of the Americana Apartments. At that time, defendant Cohen was the manager and the remaining defendants were partners in the ownership of Americana Apartments. The basic facts forming the background of the controversy are undisputed.

Two female tenants of the apartment requested permission of the manager to use a space in the basement for a new years eve party. Since two male tenants had made a similar request, the manager suggested that the two proposed parties be held as a joint party; and the suggestion was accepted. Thereafter the hostesses and hosts agreed that all tenants of the apartment house would be invited and that hosts or hostesses might invite their respective friends.

On the night of the party, a considerable number of people gathered in the basement and engaged in the usual party activities including dancing, drinking and talking. During the same evening six young men, including plaintiffs, after attending a dance elsewhere, came with their female companions to the party at Americana Apartments. At or near the time of their arrival, a disturbance arose at the party, a guest was cut on the arm, blood was deposited at numerous places about the prem-

ises, several light fixtures were broken, and a large glass front door of the apartment house was broken.

Police arrived on the scene and, in the course of their investigation, obtained the names and addresses of the six young men, including plaintiffs, who were allegedly uninvited guests, or "party crashers". Plaintiffs deny that they were "party crashers", but insist that they were invited guests.

Defendant Cohen was not present at the apartment house at the time of the disturbance, but upon his return thereafter, he observed the aforesaid damage. On the following days defendant Cohen conferred with various tenants, with his personal attorney, with defendant Pailet, and with the attorney for the Americana Apartments, after which on January 3, 1966, he went to police headquarters where one of the investigating officers, Mr. Miller, furnished him with the aforesaid list of names, including plaintiffs. Defendant Cohen and Mr. Miller went to the office of a general sessions judge where Cohen signed and the judge issued four warrants against each of the six persons named on said list, including plaintiffs, which warrants charged the offenses of: (a) disorderly conduct by being drunk, (b) destruction of property, (c) trespassing, and (d) breaking and entering.

On January 5, 1966, the charges (a) and (b), above, were dismissed by the metropolitan judge. Charges (c) and (d) were "bound over" to the grand jury and on January 21, 1966, charges (c) and (d) were "dismissed by the attorney general."

Each of the three suits involved in this appeal is founded upon a five-count declaration, the first count of which is general and inclusive whereas each of the re-

maining four counts relates and refers specifically to one of the aforementioned warrants, viz: Second Count (a); Third Count (b); Fourth Count, (c); and Fifth Count (d).

The special pleas of the defendants admitted substantially all of the averments of the declarations of the plaintiffs except that malice and want of probable cause were denied. Defendants' special pleas specifically allege probable cause, reliance upon advice of counsel, and prior investigation by police.

Upon issue being joined by replication, the causes were tried to a jury with the results aforesaid, from which defendants have appealed in error.

The first and third assignments of error are as follows:

## I

"The court erred in overruling plaintiffs in error's motion for peremptory instructions made at the conclusion of defendants in error's evidence and renewed at the close of all the evidence, and in refusing to direct a verdict for plaintiffs in error because there was no evidence to permit a finding by the jury for defendants in error or to support verdicts for them.

\* \* \* \* \* \*

## III

"There was no legally sufficient evidence to support the verdicts."

The foregoing assignments are predicated upon the premise that plaintiffs wholly failed to prove that de-

fendants acted maliciously and without probably cause or, in the alternative, upon the premise that the uncontradicted evidence shows that defendants did act without malice and with probable cause, including the advice of counsel.

■ In a malicious prosecution case, the burden rests upon the plaintiff to prove (a) malice and (b) want of probable cause, both of which are necessary to sustain the cause of action. Cohen v. Ferguson, 47 Tenn.App. 165, 336 S.W.2d 949 (1959).

■■ Malice for the purposes of malicious prosecution may be inferred from want of reasonable grounds for prosecution as the circumstances appeared to the prosecutor or as they would have appeared by ordinary circumspection and diligence on his part when he acted. Peoples Protective Life Ins. Co. v. Neuhoff, 56 Tenn.App. 346, 407 S.W.2d 190 (1966). Want of probable cause cannot be inferred from malice. Ibid.

The entire record of all the evidence presented to the jury must be examined to ascertain whether there is any material evidence therein to reasonably justify the conclusion that the prosecutions were initiated without probable cause. If not, the defendants were entitled to a directed verdict. If so, the finding of the jury in this regard may not be disturbed on appeal.

■ Probable cause is the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted; that is, acting upon the facts within the knowledge of the prosecutor, if a reasonable man would believe the party guilty of the crime charged, there would exist probable cause for the prose-

cution. Bry-Block Mercantile Co. v. Proctor, 13 Tenn. App. 45 (1931).

■ The instigator of a prosecution must have made the investigation which an ordinarily prudent man would have made in the same circumstances. Thompson v. Schulz, 34 Tenn.App. 488, 24 S.W.2d 252 (1949).

Considerable discussion has been devoted to the issue of whether any of the charges lodged against plaintiffs were legally sufficient or applicable to the facts, but the dominant and determinative issue was and is whether there was probable cause to believe that any one of the plaintiffs was guilty of any of the offenses with which he was charged. Specifically, the question was one of identification of particular individuals with particular offenses.

Upon the issue of identification, very little evidence was offered. Defendant Cohen admitted that he had never seen plaintiffs before signing the warrants against them; that on the day the warrants were issued Officer Miller gave him six names, including plaintiffs, as the names of the persons who were not invited to the party and who were caught in the building; that he talked to his attorneys before signing the warrants, but that at the time of talking to his attorneys he did not have a list of the persons against whom he later signed warrants; that he had talked to the people who hosted the party and others but none of them told him and he did not know of any specific act committed by any one of the plaintiffs; that he was told that the "trouble" started when the party was "crashed" by a group of uninvited boys. Defendant Cohen insisted that he relied upon the advice of counsel, but there is no evidence that his counsel, or anyone else, advised him that it was proper to

make blanket charges of misconduct against each member of a group on the mere ground that the group were reportedly uninvited guests at a party.

Defendant's reliance upon advice of counsel is further weakened by the testimony of chief counsel for the apartments to the effect that his advice was to seek and follow the advice and guidance of the police and attorney general. Defendant Cohen never consulted with the attorney general and the only advice shown to have been sought or received from the police was the list of the uninvited guests and guidance to the office of the general sessions judge. The conference with the general sessions judge is discussed in connection with another assignment of error.

■ It is strongly insisted by defendants that in every malicious prosecution case probable cause is a question of law for the court, rather than a question of fact for the jury. Authorities are cited wherein the court decided the question of probable cause on undisputed testimony. Such action is justified only when all reasonable minds would agree upon the inferences to be drawn from the undisputed testimony. Where reasonable men might reach different conclusions from undisputed facts, the question is for the jury. 54 C.J.S. Malicious Prosecution sec. 97, p. 1089.

■ What an ordinarily prudent person would do in particular circumstances is a matter upon which the trier of fact must draw upon observation and experience with respect to what is customarily regarded in the community as a prerequisite for the protection of others. Coleman v. Byrnes, 34 Tenn.App. 680, 242 S.W.2d 85 (1950). There is no reason why this principle of negligence law should not apply equally to all questions of reasonableness of conduct.

■ Under the evidence in these cases, the issue of probable cause was submitted to the jury, and they resolved it in favor of the plaintiffs. There being material evidence to support the verdict of the jury, it may not be set aside on appeal.

The first and third assignments of error are respectfully overruled.

The second assignment of error is as follows:

"The weight and preponderance of the evidence is against the verdicts for defendants in error and demands a finding or verdicts for plaintiffs in error, and for this reason the court should disapprove and set aside the verdicts, and the judgments entered thereon."

■ In jury cases, the Court of Appeals has no authority to determine the weight or preponderance of the evidence. See a multitude of citations in 2 Tennessee Digest, Appeal and Error, 1003.

The second assignment of error is respectfully overruled.

The fourth assignment of error is as follows:

"The court erred in excluding over plaintiffs in error's objection from the jury the evidence in toto of the witnesses Judge Sam Galloway and Mrs. Pauline Wehby."

Judge Sam Galloway is the general sessions judge who issued the warrants against plaintiffs. Mrs. Pauline Wehby is the Administrative Assistant to the Attorney General of Davidson County.

The purpose and substance of Judge Galloway's testimony is copied verbatim from defendants' brief as follows:

"Sam J. Galloway, General Sessions Judge, Part VI, Metro-Davidson County, Tennessee, was called·by plaintiffs in error for the purpose of proving the circumstances surrounding his issuance of the original arrest warrants. This evidence was excluded by the trial court but Judge Galloway was allowed to testify for the record in the absence of the jury. His testimony was that he had issued the warrants which appear in the record as plaintiffs' Exhibits 1, 2, and 3, *after having discussed the facts with Mr. Cohen, and one or more Metropolitan Police Officers, from which he made the judicial determination that probable cause existed.* (B.E. pp. 440-444).

"Judge Galloway testified, in the absence of the jury, as follows:

Q. Judge Galloway, in connection with the issuance of these warrants, Plaintiffs' Exhibits 1, 2, and 3, before affixing your signature as Judge to the warrants, did you or not have any discussions with the prosecuting witness, Gilbert Cohen, and/or any police officer or officers?

A. Yes, sir there was a discussion or presentation of the facts.

Q. Why was that done, Judge?

A. In order to determine if that Court should issue a warrant for any misdemeanor or felony.

Q. After having these statements of Mr. Cohen and/or the police officer or officers, did you then sign these

warrants authorizing the arrest of these Plaintiffs on these warrants?

A. Yes, sir, I did. (B.E. pp. 441, 442).

\* \* \* \* \* \*

Q. Judge Galloway, would you in the instance of the issuance of these warrants, Plaintiffs' Exhibits 1, 2, or 3, have affixed your signature without having first made your own determination of the existence of probable cause to believe the accused guilty of the offense charged?

A. I would not have. (B.E. p. 443)."

 The testimony offered by this witness was not sufficient to establish probable cause for the reason that the witness did not offer to testify as to exactly what defendant Cohen did say in reporting the facts to the judge.

"The mere statement of the party instituting the prosecution that he made a full and fair disclosure of the facts to counsel is not conclusive. It further must be shown what information was in fact imparted so that the jury may determine whether it was a full, truthful, statement of all the facts." 54 C.J.S. Malicious Prosecution sec. 49, p. 1015.

To the same effect is 34 Am.Jur. Malicious Prosecution Sec. 163, Wilmer v. Rosen, 102 W.Va. 8, 135 S.E. 225, 49 A.L.R. 261 (1926), Kitchen v. Rosenfeld, 44 R.I. 399, 117 A. 537 (1922), North British & Mercantile Ins. Co. v. Feldman, 149 F.2d 582 (4th Cir. 1945).

In the case of Klein v. Elliott, 59 Tenn.App. 1, 436 S.W. 2d 867 (1968), it was held that statements that "a full disclosure was made" and "after a full investigation"

were not adequate basis for concluding that reliance might be made upon advice of counsel or action of the attorney general.

■ The testimony of Judge Galloway as offered in the absence of the jury and preserved in the record is not sufficient to establish that defendant Cohen made such a full disclosure that the judge's action thereon represents a good defense to these suits. The exclusion of the testimony was, if error, harmless. This Court cannot speculate upon what the testimony of Judge Galloway might have been if he had been asked and permitted to answer exactly what was said in his presence. In the absence of an offer of such evidence and its preservation in the bill of exceptions, no error can be predicated thereon. See numerous authorities annotated in 2 Tenn. Digest, Appeal and Error, 692.

■ The argument of defendants complains of the exclusion of certain parts of the testimony of Officer Miller regarding the conversation between himself, Cohen, and Judge Galloway. Since this complaint was not registered before the trial court in the motion for a new trial and was not made a ground of assignment of error in this Court, it cannot be considered. Court of Appeals Rules, Rule 12, Lampley v. Waygood, 57 Tenn.App. 611, 422 S.W.2d 708 (1967), Carter County v. Street, 36 Tenn.App. 166, 252 S.W.2d 803 (1952).

This Court cannot speculate that defendant Cohen and Officer Miller made a full disclosure to the judge for a further reason. A full disclosure would have revealed to the judge that no one saw any one of the accused commit any of the acts charged and that the only evidence of their guilt was their uninvited presence on the premises

which were crowded with many invited guests. There is a strong presumption that no judge would issue warrants in the face of such a disclosure.

 The testimony of Mrs. Pauline Wehby as offered in the absence of the jury and excluded from the consideration of the jury, related to the handling and disposition of the two charges (breaking and entering, and trespassing) which were "bound over" to the Grand Jury. The burden of the excluded testimony is the District Attorney's decision not to present the charges to the Grand Jury, his reasons therefor and defendant Cohen's acquiescence in the disposition made. Such testimony is completely immaterial to the determinative issue of whether probable cause existed to justify the initiation of the prosecutions over two weeks previously. The attitude of defendant Cohen on the date of final disposition is immaterial since it is not seriously insisted that he acted with actual malice, but only with the technical malice incident to or inferable from want of probable cause.

Defendants' fourth assignment of error is respectfully overruled.

Defendants' fifth assignment of error is as follows:

"The court erred in refusing to permit plaintiffs in error to prove before the jury defendants in error's records and the records of Donald Lewis Sullens, Steve Shelton and James Marshall Slate, and in excluding from the jury evidence offered by plaintiffs in error via their Exhibits A, B, C, and D for identification."

Exhibit "A" is composed of a collection of papers including photostatic copies of warrants charging Donald Sullins, Steve Shelton and James Slate, with the offence

of "breaking and entering"; subpoenas to summons defendant Cohen, Officer Miller, and Officer Buck to appear before the Grand Jury in respect to charges of trespassing and breaking and entering against Sullins, Shelton, Gilley, Gill, Cook and Slate; a statement signed by defendant Cohen in connection with the disposition of said charges by the attorney general; a memo dated 1-20-66 relating to preparing said cases for presentation to the Grand Jury; records of arrests of Jim Gilbert Cook, Ray Varvin Gill, Terry S. Gilley, Steve Gerald Shelton, Donald Lewis Sullins, and James Marshall Slate.

Exhibit "B" includes lists of traffic violation citations and arrests of Terry Franklin Gilley, Ray Varvin Gill, Donald L. Sullins, Stephen J. Shelton, James Marshall Slate, and James Gilbert Cook.

Exhibit "C" is an accumulation of Criminal Court minutes regarding prosecutions of Donald Sullins and James Slate.

Exhibit "D" consists of pleadings and orders in Circuit Court in the cases wherein Donald L. Sullins and Steve Shelton have sued these same defendants.

 Other than an allusion to the testimony of Mrs. Wehby in connection with Exhibit "A", the fifth assignment of error is not discussed at all in defendants' argument and brief, hence this assignment must be deemed to have been waived. Court of Appeals Rules, Rule 13.

 Furthermore, the contents of Exhibits "A", "B", "C", and "D" are generally immaterial to the issues in this case. Certain parts thereof might have been admitted for special purposes, but their exclusion was, if error, harmless.

Defendants' fifth assignment of error is respectfully overruled.

Defendants' sixth assignment of error complains of the refusal of the trial judge to charge defendants' specially requested instructions numbered 1, 2, 3 and 5. Said specially requested instructions were received by this Court in their original form but without proper authentication. Requests numbered 1, 2, and 3 bear the notation, ''Refused R.A.M. Judge''. Request numbered 5 contains no such notation. The requests are bound together with a title sheet which is marked filed on April 2, 1968. The special requests contain no other authentication and are not mentioned at all in the bill of exceptions. The mere filing of special requests does not make them a part of the record unless incorporated in the bill of exceptions. Gordon's Transports v. Bailey, 41 Tenn.App. 365, 294 S.W.2d 313 (1956).

Requests for special instructions must be made after the delivery of the court's general charge to the jury, and this fact must appear affirmatively in the record to make their refusal available on appeal. Chicago Guaranty Fund Life Soc. v. Ford, 104 Tenn. 533, 58 S.W. 239 (1900).

Defendants' brief contains the following:

''Before the trial judge charged the jury special requests were submitted by counsel for plaintiffs in error, together with authorities. Insofar as the functions of judge and jury in suits of this nature are concerned, it is contended that the requisite authorities were in possession of the learned trial judge prior to his rendition of the charge.''

 Said special requests for instructions are contained in the transcript of the technical record, but this likewise is insufficient for the reason that none of the special requests contains any indication that it was seasonably offered and one contains no authentication at all. In Toomey v. Goad, 12 Tenn.App. 80 (1928) it was held that a signed statement of refusal by the trial judge was sufficient authority to include special request in the technical record, but in that case the signed statement showed that the request was offered and refused after the general charge. In the case of Oliver v. City of Nashville, 106 Tenn. 273, 61 S.W. 89 (1901) the notation of the trial judge containing the words ''already charged in substance'' was held sufficient to establish the time of offering special requests. No such notation appears on the special requests in the present case.

 In spite of the technical difficulties aforesaid, the said special requests have been informally considered, and it has been found that their substance was included in the general charge to the jury. Their refusal was not error. See cases annotated in Vol. 18 Tenn. Digest, Trial 260.

Defendants' sixth assignment of error is respectfully overruled.

Defendants' seventh assignment of error is as follows:

''The court erred after refusing to grant plaintiffs in error's motion for directed verdicts in failing to instruct the jury that there was no evidence that plaintiff in error Gilbert L. Cohen was a partner of his co-defendants, Theodore H. Pailet, Albert G. Morris and Evergreen Land Company, Inc., dba, Americana Apartments, and in instructing the jury:

'* * * I charge you further, Ladies and Gentlemen of the Jury, and I do charge you that partners are jointly liable for an act of their employee authorized by one of the partners, and are jointly liable for the act of an employee performed in the scope of his employment.' ''

■ A careful review of the Assignments of Error Brief and Argument and the Supplemental Brief of the defendants fails to disclose any citation, authority or argument in support of this assignment. The assignment is therefore deemed to have been abandoned and waived. Court of Appeals Rules, Rule 13.

■ Even if the seventh assignment of error were properly briefed and argued, it could not be sustained because no special request for the desired charge is preserved in the record and the instruction complained of is a correct statement of the law.

Defendants' seventh assignment of error is respectfully overruled.

Defendants' eighth assignment of error is as follows:

''The court erred in charging the jury:

''An attorney acting as agent in investigating for his client owes the same duty as the client to use reasonable diligence and to make proper investigation before advising a criminal prosecution, and both he and the client are chargeable with knowledge of all of the facts which could have been learned by such diligent investigation.

In actions of this kind, whether the attorney who has acted as agent in investigating facts for defendant

and as attorney in giving his legal advice to defendant to bring a criminal prosecution exercised reasonable diligence and made proper investigations, and whether he, in good faith, advised defendant to bring prosecutions is for you, the Jury, to determine.' ' "

There is likewise no citation, authority, or argument to support this assignment except quotations from the charge and the statement:

"We submit that the Court's instructions are not reconcilable with the applicable law of Tennessee. The charge left it entirely for the jury to find what the facts and circumstances were, and also to decide then whether or not these justified a prosecution. This was manifest error under the Tennessee case law."

 The quoted section of the charge, if error, was harmless because, as previously stated, the defendants failed to prove that the prosecutor made a full and frank disclosure of all details to his attorney and was not unequivocally advised by his attorney to prosecute a particular person upon a particular criminal charge.

Defendants' eighth assignment of error is respectfully overruled.

Defendants' ninth assignment of error is as follows:

"There was no evidence to support the erroneous findings and verdicts of the jury for defendants in error for punitive damages."

 There is no evidence of any prior acquaintance, transaction or animosity between defendants and plaintiffs. There is no evidence of actual malice. There is no

evidence of any ulterior motive from which malice might be implied.

The leading and most often quoted authority in Tennessee on punitive damages is Railroad v. Guinan, 79 Tenn. 98 (1883) wherein the Supreme Court said:

"To entitle the injured party to exemplary damages there must be aggravating circumstances, and the turpitude of the defendant's conduct is alone considered. Exemplary damages are allowed when a wrongful act is done with a bad motive, or so recklessly as to imply a disregard of social obligation; or where there is negligence so gross as to amount to positive misconduct: 1 Suth. on Dam., 723, Sedg. on Dam., 33. If a person act under a mistaken sense of duty, and without any intention of oppression, it is a case for compensatory and not exemplary damages: Wiggin v. Coffin, [Fed.Cas.No.17,624], 3 Sto., 1." 79 Tenn. at 103.

The actions of the defendants were not gross or wilful. At most, they must be characterized as injudicious and imprudent. The effort, however imperfect, to rely upon advice of counsel and guidance of police, does reflect an honest desire and intent to proceed correctly.

The record in these cases does not justify the imposition of punitive damages.

The ninth assignment of error is sustained.

The tenth assignment of error is as follows:

"Defendants in error's verdicts were excessive, and so excessive as to evidence passion, prejudice and caprice on the part of the jury."

Special damages were shown in each case consisting of cost of bail bonds, attorneys fee and lost time from work, amounting to a total of approximately $250.00. Other injuries consist of inconvenience and embarrassment incident to arrest, temporary detention for booking and bail, and about five hours detention in the "drunk tank" of the jail.

No specific injury or loss is shown because of injury to reputation. The offenses named in the warrants do not involve moral turpitude or infamy hence no grave injury to reputation can be presumed.

Each of the cases annotated in 14 Tenn. Digest, Malicious Prosecution 69, has been reviewed, and in the light of the holdings therein and the facts of these cases, this Court is of the opinion that each of the verdicts of the jury and judgments thereon for compensatory damages should be reduced to $2,500.00 and a remittitur is suggested to accomplish such reduction. Sec. 27-119 T.C.A., Methodist Hospital v. Ball, 50 Tenn.App. 460, 362 S.W.2d 475 (1961).

To the extent indicated, the defendants' tenth assignment of error is sustained. In other respects it is overruled.

The general merits of these cases have been discussed to a considerable degree in disposing of the assignments of error. From a view of all of the facts and circumstances, it is clear to this Court that plaintiffs have suffered a wrong as a result of inexperience, imprudence and lack of that meticulous care which ought to characterize any approach to any arrest or criminal prosecution. Plaintiffs are entitled to be compensated for their injury, but not

more than reasonably comports with the nature of the injury.

Defendants rely upon the case of Peoples Protective Life Ins. Co. v. Neuhoff, 56 Tenn.App. 346, 407 S.W.2d 190 (1966) wherein a verdict for the plaintiff was set aside because the unquestioned facts presented a case of probable cause as a matter of law. In that case, the accused Neuhoff voluntarily made a statement to the assistant district attorney after which the assistant district attorney recommended that forgery charges be placed against Neuhoff. It was unquestioned that the entire investigation was made by the public authorities who made recommendations which were followed.

In the present case, there is no evidence of any specific recommendation of the public authority (police) except the furnishing of names and conduct to the judge's office. The details of any other communications are lacking. In the present case there is not that conclusive evidence of probable cause which existed in the Neuhoff case.

Defendants also rely upon Cohen v. Ferguson, 47 Tenn. App. 165, 336 S.W.2d 949 (1959) wherein the accused was actually seen by the police officers and employees of the prosecutor in the act of removing a bumper from a junk automobile of prosecutor. In the present case it is not shown that prosecutor was informed that any person had seen any of the plaintiffs commit any unlawful act.

Defendants correctly insist, on the authority of the foregoing cases, that the burden of proof is upon the plaintiff to show lack of probable cause by a preponderance of all the evidence. Where, however, arrest, trial, and exoneration are shown, and the plaintiff testi-

fies on his own innocence of guilt or the appearance of guilt, the burden of proceeding shifts to the defendant, requiring him to produce for evaluation all of the facts and circumstances which he claims as justification for the prosecution. When the defendant has concluded his efforts to justify his actions, the burden of proof remains upon the plaintiff and it is for the jury to determine whether the preponderance of evidence shows that the prosecution was without probable cause.

In the present case, after hearing all the evidence, the jury found from a preponderance of all the evidence that the prosecution was without probable cause. From this finding, an inference of technical malice may be drawn to complete the necessary requisites of a malicious prosecution suit.

The statutes of this State are calculated to reduce the probability of such regrettable cases as these. Sections 40-702, 40-703, 40-704 provide as follows:

"40-702. *Examination of informant.*—Upon information made to any magistrate of the commission of a public offense, he shall examine, on oath, the informant, reduce the examination to writing, and cause the examination to be signed by the person making it. [Code 1858, sec. 5020; Shan., sec. 6979; Code 1932, sec. 11518.]

"40-703. *Contents of examination.*—The written examination shall set forth the facts stated by the informant tending to establish the commission of the offense and the guilt of the defendant. [Code 1858, sec. 5021; Shan., sec. 6980; Code 1932, sec. 11519.]

"40-704. *Issuance of warrant.*—If the magistrate is satisfied therefrom that the offense complained of has been committed, and there is reasonable ground to believe the defendant is guilty thereof, he shall issue a warrant of arrest. [Code 1858, sec. 5022; Shan., sec. 6981; Code 1932, sec. 11520.]"

Strict adherence to and compliance with the foregoing would minimize the possibility of unfounded prosecutions, and protect accusers from the perils of lawsuits for malicious prosecution.

In each of these cases, the verdict and judgment for punitive damages is reversed and the suit for punitive damages dismissed.

In each of these cases, a remittitur of $2,500.00 is suggested, reducing the recovery for compensatory damages to $2,500.00, and plaintiffs are allowed 30 days from the filing of this opinion within which to file with the Clerk of this Court a suitable acceptance of the said remittitur. Upon filing of such acceptance, the verdict and judgment for the plaintiff in the reduced amount will be affirmed.

In event of failure by any plaintiff to so file his acceptance, then the case in which he is plaintiff will be remanded for a new trial upon the sole issue of compensatory damages.

The costs of these appeals are taxed against the defendants-plaintiffs in error.

Reversed in part, modified in part and, as modified, affirmed.

Shriver, P.J. (M.S.), and Puryear, J., concur.