COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| CYNTHIA TALAMANTES, | § | No. 08-14-00142-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court at Law No. 2 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120C00358) |
| | § | |

## **O P I N I O N**

A jury found Cynthia Talamantes guilty of misdemeanor driving while intoxicated (DWI). The trial judge assessed punishment at 180 days in jail and a fine of $500.00, but he suspended imposition of the sentence and placed Talamantes on community supervision for ten months. In one issue, Talamantes contends that the trial judge violated her Sixth Amendment right to confront the witnesses against her by permitting a forensic analyst to testify based on data generated by another analyst. We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Talamantes was involved in a road-rage incident with another motorist. She and the other motorist drove to a regional police station to report the incident. Talamantes parked but remained inside her vehicle with its engine running. After learning from another officer what had

transpired, El Paso Police Officer Hector David Flores approached Talamantes to obtain a statement from her.

While speaking to Talamantes, Flores smelled a strong odor of alcohol emanating from her breath and body and noticed that she had slurred speech and was swaying slightly. Suspecting that Talamantes was intoxicated, Flores asked her to perform the three standard field sobriety tests. When Talamantes refused, Flores arrested her for DWI. Flores then requested a breath and blood specimen from Talamantes but she refused to provide one, prompting Flores to obtain a search warrant for a blood draw.

Pursuant to the warrant, Talamantes's blood was drawn at a local hospital. After being labeled and secured, the blood sample was sent to the Texas Department of Public Safety's (DPS) toxicology laboratory for testing to determine Talamantes's blood-alcohol concentration (BAC). A DPS Forensic Analyst John Janczak handled and tested Talamantes's blood sample and prepared a report based on his analysis. Janczak's work was reviewed and verified by Ana Lidia Romero, another DPS forensic analyst.

At trial, the State called Romero, but not Janczak, to testify regarding the analysis of Talamantes's blood sample because Janczak no longer worked at the DPS lab. Outside the presence of the jury, defense counsel raised a Confrontation Clause objection to the admission of Janczak's report and Romero's testimony. The trial judge held a hearing during which Romero was questioned by the judge, defense counsel, and the prosecutor.

Under examination, Romero acknowledged that she neither tested Talamantes's blood sample nor observed Janczak test it and, as a result, conceded that she was unable to testify to "any circumstances or conditions which might affect the integrity of the sample and otherwise affect the

2

availability of [the] analysis." Romero explained that, although she did not participate in the actual examination of Talamantes's blood sample, she did "the technical review on all [Janczak's] work" as required by DPS's standard operating procedures. Romero described technical review in the following manner:

> All the case, and the work, anything done on the case needs to be reviewed by another chemist or someone proficient on this discipline. If the -- if the technical part has not been met, that report will not be released. It is almost like a two-person team. Just because one person does the work doesn't mean that person can release that work. It needs to be reviewed, verified, by a second scientist.

When asked by the trial judge whether she felt she could adequately render an opinion based on something she did not do, Romero answered that she could because:

> I can look at the raw data, and it's -- it is a DPS case which means it's our instrument. I know how it is supposed to be calibrated, I know the procedures that need to be followed by reading the standard operating guidelines, an expert witness can actually read our guidelines and see them, and then if we can give them the raw data, they should be able to come to a conclusion. We have had that happen with other expert witnesses, when they are -- required our data to look at it to see if they can reach the same conclusions that we have.

Later in the hearing, Romero reiterated that she was able to testify to her own conclusions based on her review of the raw data without referring to Janczak's report. Romero was confident that she could do so because part of her technical review of Janczak's work encompassed verifying that the gas chromatograph machine used to test Talamantes's blood sample was operating properly when Janczak tested the sample. Thus, in Romero's view, the raw data disclosed by the testing was valid. The trial court partially granted defense counsel's Confrontation Clause objections. He sustained the objection to Janczak's report but overruled the objection to Romero's testimony, reasoning that the underlying data on which she relied to form her opinion was not a testimonial statement.

3

To the jury, Romero identified the scientific technique used to test Talamantes's blood samples submitted to the lab—head-space analysis—and the machine used to test the samples—a gas chromatograph. She explained, in essence, that the gas chromatograph generates raw data concerning the presence of alcohol molecules and that this data is then analyzed to determine the concentration of alcohol in the blood sample. Romero described in detail the procedures and protocols an analyst must follow to verify that the gas chromatograph is working properly. She also identified her role in the testing of Talamantes's blood sample—quality control through technical review—and offered an explanation, similar to the one given to the trial judge, of what technical review meant. Summing it up, Romero told the jury that, with respect to Talamantes's blood sample, she was able to review the raw data generated from the testing and verify the quality control measures. In Romero's opinion, the raw data was valid. When asked what conclusion she drew from her independent review of the raw data, Romero answered, "That the alcohol concentration was 0.13 grams of alcohol per 100 milliliters."

On cross-examination, Romero reiterated that she neither tested Talamantes's blood sample nor was there when it was tested.

## CONFRONTATION CLAUSE

Talamantes argues that Romero's testimony violated her Sixth Amendment right to confront the witnesses against her because Romero was not involved in the actual testing of her blood sample and, therefore, had no personal knowledge of how the testing was conducted on which to be cross-examined. We disagree.

### *Standard of Review*

We review a trial judge's evidentiary ruling for an abuse of discretion. *Ramos v. State*,

4

245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).   If the trial judge's ruling is correct under any applicable legal theory and is reasonably supported by the record, we will not disturb it.   *Id*. at 418.

### *Applicable Law*

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against her.   U.S. CONST. Amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).   The Clause prohibits the admission of out-of-court testimonial statements made by a witness who does not appear at trial unless he is unavailable and the defendant had a prior opportunity to cross-examine him.   *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365-66, 158 L.Ed.2d 177 (2004).   Because forensic lab reports are testimonial in nature, the Clause applies to them.   *Bullcoming v. New Mexico*, --- U.S. ---, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11, 129 S.Ct. 2527, 2531-32, 174 L.Ed.2d 314 (2009); *Burch v. State*, 401 S.W.3d 634, 636-37 (Tex.Crim.App. 2013)   Accordingly:

> (1) [t]he admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause[;] and

> (2) testimony from an expert explaining that non-testifying analyst's report does not provide an adequate substitute for cross-examination even if the testifying expert is generally familiar with how the relevant analysis is customarily performed.

*Paredes v. State*, 462 S.W.2d 510, 517 (Tex.Crim.App. 2015)(synthesizing these principles from *Melendez-Diaz*, *Bullcoming*, and *Burch*).   In other words, the Confrontation Clause prohibits the admission of testimonial statements, either in the form of forensic reports or testimony based on those reports, from a "surrogate" who is nothing more than a conduit for another's conclusions.

5

*See Paredes*, 462 S.W.2d at 518. But the Confrontation Clause does not prohibit the admission of an expert's testimony based upon forensic analysis performed by a non-testifying analyst if:

> (1) the testifying expert independently analyzes the data generated by the non-testifying analyst and develops her own conclusions from the data; and

> (2) the lab report created by the non-testifying analyst is not offered into evidence.

*See id*.

### *Discussion*

Romero's testimony based upon the raw data generated from Janczak's forensic analysis of Talamantes's blood sample did not violate Talamantes's Sixth Amendment right to confront the witnesses against her. Romero was not a mere conduit for Janczak's conclusions. She did not rely on his written analysis as the basis for her opinion that Talamantes's BAC was 0.13 grams of alcohol per 100 milliliters. Instead, in so opining, Romero independently reviewed and analyzed the raw data generated from the testing of Talamantes's blood sample, verified the accuracy of the data, and explained her involvement in the testing process. Just as important, she was subject to cross-examination at trial regarding the basis for her opinions and the accuracy of the testing process, and no forensic lab reports were introduced into evidence at trial.

Invoking *Bullcoming*[1] and *Melendez-Diaz*[2] in support, Talamantes argues that her Sixth

---

[1] In *Bullcoming*, the Supreme Court held that the defendant's Sixth Amendment right to confront the witnesses against him was violated when the trial court admitted a forensic lab report certifying that his blood alcohol content was above the legal limit based on the testimony of an analyst who neither signed the report nor had participated in or observed the testing of the blood sample but who was merely familiar with the lab's testing procedures. 131 S.Ct. at 2709. The Court reasoned that because the report was the testimonial statement of the analyst who performed the tests, the defendant had the right to confront the analyst who made the certification. *Id*. at 2710. Accordingly, the Court concluded that the report could not be offered into evidence through the testimony of a "surrogate" witness. *Id*. at 2710-11. In reaching this conclusion, the Court rejected the argument that the analyst was only interpreting machine-generated data and that the testimonial statements were therefore those of the machine. *Id*. at 2714-15.

[2] In *Melendez–Diaz*, the Supreme Court held that the defendant's Sixth Amendment right to confront the witnesses against him was violated when the trial court admitted three notarized certificates of analysis identifying a substance

6

Amendment right to confront the witnesses against her was violated when she was not permitted to confront Janczak at trial because his forensic lab report is testimonial in nature. According to Talamantes, the content of Janczak's report was admitted into evidence in the guise of print-out data from the gas chromatograph. In other words, Talamantes asserts that Romero was nothing more than a conduit for Janczak's conclusions. But Talamantes's assertion is belied by our discussion establishing the contrary. Accordingly, the trial judge did not abuse his discretion in admitting Romero's testimony based upon the raw data generated from Janczak's forensic analysis of Talamantes's blood sample.

Talamantes's issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

November 10, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

as cocaine without the testimony of the analyst who tested the substance and prepared the certificates. 557 U.S. at 309-11, 129 S.Ct. at 2531-32. The Court reasoned that because the certificates were testimonial in that they were functionally identical to live, in-court testimony, the defendant had the right to confront their authors. 557 U.S. at 310-11, 129 S.Ct. at 2531-32. Accordingly, the Court concluded that the certificates could not be offered into evidence unless their authors were subject to cross-examination. 557 U.S. at 311, 129 S.Ct. at 2532.