HORN POND ICE COMPANY *vs.* LUDWIG PEARSON & another.

Middlesex.     January 7, 1929. — May 29, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Agency,* Agent's duty of fidelity. *Fiduciary. Contract,* Validity, In restraint of freedom of employment, Of employment. *Equity Jurisdiction,* To restrain unlawful interference. *Trust,* Constructive. *Unlawful Interference. Trade Secret.*

An ice company was lessee of the ice houses on a certain pond and of the right to cut ice therein. This source of supply, although not as large as others possessed by the company, was important and peculiarly valuable to it. By reason of the fact that the company did a large part of the ice business in that town, its list of customers was no more than a list of persons therein who used ice. The company requested one of the drivers of its wagons to execute a contract relative to his not engaging in the ice business in that territory for a certain period after his employment with the company should have terminated. The driver refused to execute the contract, but, in order to avoid being laid off, orally promised that he would never hurt the company and never would go into business against it. About two years before the expiration of the company's lease, the driver negotiated with the lessor for a lease. Shortly before the lease expired, the lessor offered the driver a lease if he would furnish security for his performance, and, in negotiations with the company for a new lease, continually made reference to a "deal pending with" another party. The lessor and the driver thereafter executed a lease to commence at the expiration of the previous lease, the driver intending to harvest and store ice for sale, knowing that the company needed the ice and was the most likely customer. The lessor would have renewed the company's lease if the

driver had not taken a lease. The driver through his employment knew of the peculiar value of the lease to the company and also knew that it desired a new lease. Several months later the driver left the employ of the company and, negotiations with the company for the purchase of his rights under the lease having failed, commenced selling ice in competition with the company. The company did not know until he left its employ that he had a lease or had negotiated for one. In a suit in equity thereafter commenced by the company against the driver, the plaintiff sought to enjoin the defendant from using information as to its customers gained by him while in its employ; to enjoin him from competing with the plaintiff in violation of his oral promise; and an adjudication that the defendant held the lease for the plaintiff's benefit. *Held*, that

(1) In the circumstances, the information as to the plaintiff's customers and their requirements, gained by the defendant during the course of his employment by the plaintiff, was not confidential nor in the nature of a trade secret; and the plaintiff was not entitled to relief with respect thereto;

(2) The oral agreement by the defendant not to compete with the plaintiff was unreasonable in view of all the circumstances, and could not be enforced;

(3) The defendant was a constructive trustee of the lease for the benefit of the plaintiff, who was entitled to an assignment of it by the defendant, irrespective of the right of the plaintiff to such assignment as against the lessor.

BILL IN EQUITY, filed in the Superior Court on May 11, 1928, and afterwards amended.

The bill, and material facts found by a master to whom the suit was referred, are described in the opinion. The suit was heard upon the master's report by *F. T. Hammond*, J., by whose order there were entered interlocutory decrees, the first confirming the report and the second adjudging the defendants to be constructive trustees for the plaintiff's benefit of the lease mentioned in the opinion, and that the plaintiff was entitled to an assignment of the lease from the defendants upon paying to them the rent which they had paid thereunder less net profits realized by them to the date of the decree; recommitting the suit to the master for determination of the amount of such profits; and denying the prayers for injunctions contained in the bill. Under G. L. c. 214, § 30, the judge reported the second decree for determination by this court.

*J. Hannigan,* (*J. E. Hannigan* with him,) for the plaintiff.
*S. L. Solomont,* for the defendants.

RUGG, C.J.  This case comes before us by report upon the pleadings and master's report for the determination of an interlocutory decree.  The plaintiff is a corporation engaged in the business of harvesting, storing and selling ice.  The defendants are former employees of the plaintiff.  The objects of the suit are (1) to restrain the defendants from using confidential information acquired by them while employed by the plaintiff, (2) to restrain the defendants from competing with the plaintiff contrary to an alleged agreement, and (3) to secure an adjudication that the defendants hold for the benefit of the plaintiff the lease of a certain pond in Woburn.

The facts found by the master, so far as pertinent to the grounds of this decision, may be summarized with respect to each of these objects for which relief is sought.

1.  The territory in which the plaintiff for many years has carried on business is Woburn, Winchester and most of Stoneham and of Burlington.  The defendants for a number of years prior to the acts here in controversy had been employed by the plaintiff as drivers of ice wagons and in harvesting ice. The list of customers of the plaintiff, because it did a large part of the ice business in Woburn where the defendants worked, was no more than a list of persons using ice;  and the knowledge of the plaintiff's customers and of their requirements was not confidential or in the nature of trade secrets.  The first relief sought, therefore, must be denied.

2.  In 1925, the plaintiff requested all its employees to sign a contract in writing, agreeing in consideration of the employment not to engage in any branch of the ice business within the territory where the plaintiff did business for a period of five years after the termination of the employment. The defendants refused to sign the contract.  The plaintiff's manager said to each of the defendants that he would have to lay off some of the men during the winter but would give preference to those who signed the contract.  In order to avoid being laid off and to secure preferential treatment, each defendant said in substance that he would never hurt the company and never would go into business against it.  Manifestly such an unrestricted promise in the circumstances here disclosed cannot be enforced.  It is unreasonable in view of

all the facts. These promises were not made in connection with the sale of a business but in connection with an ordinary employment involving no special skill and no relations of particular confidence. *Taylor* v. *Blanchard,* 13 Allen, 370. *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 474. *Edgecomb* v. *Edmonston,* 257 Mass. 12, 18. *Club Aluminum Co.* v. *Young,* 263 Mass. 223, 228. The case at bar is distinguishable on this point from *Walker Coal & Ice Co.* v. *Westerman,* 263 Mass. 235.

Plainly there are no general principles of law which on the facts found prevented the defendants from leaving the service of the plaintiff and entering into a competing business.

It follows that the plaintiff fails to establish adequate basis for the second relief sought.

3. The plaintiff has two main sources for supply of ice, both in Woburn. It owns land and ice houses on the shore, and the right to cut the ice, of Horn Pond. For a substantial time prior to July 1, 1927, the date of expiration of its last lease, it was also the lessee of the right to cut ice on Mill Pond and of adjacent ice houses. The latter source of supply, although only about one tenth the size of the former, is nevertheless highly important and peculiarly valuable to the plaintiff. This finding is amply supported by subsidiary facts reported by the master, which need not be narrated. Knowledge of such peculiar value to the plaintiff came to the defendants as a result of their employment by the plaintiff. The defendants, although having a definite idea, had no specific information as to the existence or terms of the plaintiff's lease of Mill Pond, until the spring of 1925, when the lessor, who had become acquainted with one of the defendants through the latter's employment by the plaintiff, asked him whether he would consider taking the lease. This defendant answered that he would like to take the lease but did not have sufficient money. It was left that if this defendant could handle it when the plaintiff's lease expired, the lessor would get in touch with him. The plaintiff in the spring of 1927 negotiated with the lessor for a new lease for a considerable period, each haggling for a bargain more favorable to his own interests, until at last, about May 10, the plaintiff offered

an annual rental of $500 for a lease for five years. One of the inducements continually used by the lessor was "reference to the deal pending with some other parties saying that he had been requested not to disclose" their names, as in fact he had been by one of the defendants. In March a lease on these terms had been offered to the defendants provided they would furnish security for their performance. The defendants took a day off from their employment with the plaintiff, but without disclosing to it their purpose, to obtain the interview at which this offer was made. Thereafter they were engaged in attempting to obtain the security demanded. If the defendants had been unwilling and unable to comply with these terms, the lessor would have leased the premises to the plaintiff. On May 12 the lessor and on May 24 the defendants signed a lease of practically the same premises and privileges held by the plaintiff by lease expiring on July 1, on the terms offered to the lessor by the plaintiff, although the rental was subsequently commuted into a single cash payment in advance. During the entire period of their negotiation for the lease, the defendants knew that the plaintiff desired and was attempting to renew its lease. At the time they decided to take the lease, the defendants formed the intention of harvesting and storing the ice on Mill Pond for their own profit by sales either at wholesale or at retail, knowing that the plaintiff was the most likely customer and needed the ice. On December 17, 1927, the defendants were again asked by the plaintiff to sign contracts of employment such as have already been mentioned. They refused and notified the plaintiff that they would leave its service on December 24, at the same time informing its manager that they held the lease of Mill Pond. This was the first knowledge it or its employees, other than the defendants, had of that fact. The plaintiff attempted to make terms with the defendants for the purchase of their rights under the lease, but without avail. The local newspaper soon after published in a conspicuous place an article to the effect that the defendants had secured the Mill Pond rights and were going into the ice business. Thereafter the defendants harvested and stored the ice on Mill Pond. They awaited

expectantly but in vain an offer from the plaintiff and then purchased the necessary equipment and commenced the business of selling the ice, thus harvested, at retail in competition with the plaintiff.

An employee, who learns in the course of or by reason of his employment that the premises where his employer's business is conducted are of peculiar value to his employer or one carrying on his business, has no right without his employer's knowledge to take a lease of those premises and hold them as his own to the injury of his employer's property. That principle was declared after a full review of the authorities in an exhaustive opinion written by Mr. Justice Loring in *Essex Trust Co.* v. *Enwright*, 214 Mass. 507. It would be vain to traverse that ground again. That principle has been followed in subsequent cases to which it was pertinent. *H. C. Girard Co.* v. *Lamoureux*, 227 Mass. 277. *Aronson* v. *Orlov*, 228 Mass. 1, 5. See *Edisonia, Ld.* v. *Forse*, 25 Rep. Pat. Cas. 546, 552 (1908). It is precisely applicable to the crucial fact that the defendants learned of the special and peculiar value to the plaintiff of the right to harvest, store and use the Mill Pond ice by reason of their employment by the plaintiff.

The interlocutory decree rightly adjudged the defendants constructive trustees of the lease for the benefit of the plaintiff. It also was not erroneous in declaring that the plaintiff is entitled, so far as concerns the rights of the defendants, to an assignment from the defendants of the lease. The question of the rights of the plaintiff to an assignment as against the lessor is not involved in this case because the lessor is not a party to it. There is no ground in law to prevent the operation of the equitable rights of the plaintiff against the defendants as set forth in the interlocutory decree. The defendants are trustees for the plaintiff in the circumstances disclosed. The principle stated in *Shankman* v. *Leavitt*, 262 Mass. 501, and *Ellis* v. *Small*, 209 Mass. 147, 149, 150, does not forbid the relief here granted.

*Interlocutory decree affirmed.*