SIMON KASET et al., Complainants, Appellants v.
ROY H. COMBS, Defendant, Appellee.—434 S.W.(2d)
838.

Eastern Section. June 13, 1968.

Certiorari Denied by Supreme Court September 16, 1968.

560

■

Bishop, Thomas, Leitner, Mann & Milburn, Chatta-nooga, for appellants.

King & Fuston, Chattanooga, for appellee.

McAMIS, P. J.  Simon Kaset et al., partners doing business as Kaset's Mobile Coffee Service, filed the bill in this case against Roy H. Combs, a former route sales-man for complainants, to enjoin his present activities as an employee of Jack Blaylock, a competitor of complain-ants.

The bill alleges a violation by defendant of his em-ployment contract which bars him from accepting com-petitive employment for a period of one year after leav-ing complainants' employ within a radius of 35 miles.

After a hearing on oral testimony and affidavits filed in support of defendant's motion to dissolve a temporary injunction, the Chancellor dismissed the bill. Complain-ants have appealed. We quote from the Chancellor's opin-ion:

"The complainants operate a catering business in Chattanooga. The business consists of preparing and sell-ing food to employees of manufacturing and commercial establishments during their lunch hours and 'coffee break' rest periods, which food is taken from the com-plainants' kitchens by complainants' catering trucks to the various business and manufacturing establishments in the city, thus making the food available to the employ-ees of the commercial and manufacturing establishments served. The defendant operated one of complainants' catering trucks for 6½ years before he voluntarily quit on or about July 14, 1967. On December 14, 1966, the

defendant signed a written contract with the complainants wherein he 'agrees that in the event of the termination of his contract for any reason, except as hereinabove described, or in the event that said employee desires to quit his employment, he shall give his employer ten days notice and said employee shall not within one year after termination of such employment directly or indirectly as principal, agent, servant, or otherwise carry on or be concerned or interested in the business of mobile coffee and food catering service (as operated by the employer) within a radius of 35 miles from the location or locations of the employer in Chattanooga, Tennessee, except on behalf or with the consent in writing of the said employer or his successors in business.' A similar provision was also contained in a collective bargaining agreement entered into between complainants and a labor union, of which the defendant was a member and which agreement the defendant helped to negotiate.

"For several months following his termination of his employment with the complainants, the defendant attempted to make a living by operating a beer tavern and cafe, but was unsuccessful. Finally, some four months later, he accepted employment with Jack V. Blaylock, who operates a mobile catering business in Chattanooga in competition with the complainants. In his new employment, the defendant operated a mobile catering truck in the same fashion he had done for the complainants and served four commercial establishments which he had previously served in his employment with the complainants. Therefore, the complainants brought this suit to enjoin the defendant from violating the agreement above quoted and the cause has been heard on motion to dissolve the temporary injunction. Although the motion to dissolve

purports to be based upon want of equity on the face of the bill and 'upon bill and answer', it actually was heard on oral testimony and affidavits filed.''

The Chancellor concluded complainants' business was not of such nature as to require protection from defendant's activities, especially since no 'trade secrets'' are involved. The opinion continues:

''The inference from the evidence is that the products sell themselves. For instance, a coffee drinker will choose the best cup of coffee, regardless of which catering truck carries it, provided the price is competitive. Indeed, if the restriction here sought to be enforced is to be upheld by injunction, then similar restrictions could be enforced on girls who wait on cars in drive-in restaurants or against waitresses in cafes, service station attendants, department store sales ladies or any number of persons similarly engaged in waiting upon the public. Indeed, there is no end to which such restrictive devices could be used. Secondly, the restriction, in the language of Restatement, 'imposes undue hardship upon the person restricted'. It is one thing for the catering company to lose a customer here and there, but it is quite another thing to tell a man who earns his daily bread by operating a catering truck that he must move his wife and children to another town before he can get a job. For instance, in the case at bar defendant attempted to secure employment in Rome, Georgia, beyond the 35 mile radius, but found that his two invalid children could not obtain proper schooling there.''

We concur in the finding of the Chancellor that the identity or personality of the driver of the caterer's truck has little to do with sales and that it is the quality of the product that largely controls.

Defendant's successor on the route formerly worked by defendant testified he suffered reduction in commissions when defendant began working for Blaylock. It appears, however, that Blaylock had only recently started his business and that customers are inclined to try out a new product in order to compare its quality with the one they are already using. It is impossible to tell how much business was lost because of the appearance of a new and different product and how much, if any, was due to defendant's acquaintance with complainants' customers. It is to be remembered defendant had been off the job for more than four months during which he had no contact with complainants' customers. Others he could not solicit on his present route because Blaylock had no right to enter four of the plants served by complainants.

Complainants insist defendant was able to use on his new job knowledge of customers' likes and habits, such as whether a particular customer liked cream in his coffee, as well as information about complainants' products acquired while in their employ. Such information as defendant had must have been known to the general public or, if not, it would have been quickly acquired by the new driver of complainants' truck assigned to this route. Such knowledge can hardly be classed as "trade secrets", one of the usual grounds justifying injunctive relief.

■ Where such restrictive contracts are reasonable as to territory and time, where a violation would result in serious damage or injury to the employer and impose no undue hardship upon the employee a court of equity will enjoin a violation of the restrictive provisions of the employment contract. Fed. Mut. Imp. & Hdw. Ins. Co. v. Anderson, 49 Tenn.App. 124, 351 S.W.2d 411, and cases cited.

██ "Agreements in restraint of trade, such as covenants restricting competition, are not invalid per se. Although disfavored by law, such agreements are valid and will be enforced, provided they are deemed reasonable under the particular circumstances." Allright Auto Parts, Inc. v. Berry, 219 Tenn. 280, 409 S.W.2d 361.

In that case the Court cited with approval Restatement of the Law, Contracts, Sec. 515, p. 988, as follows:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it:

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed."

In Matthews v. Barnes, 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350; Arkansas Dailies v. Dan, 36 Tenn.App. 663, 260 S.W.2d 200, and Fed. Mut. Imp. & Hdw. Ins. Co., v. Anderson, supra, the restrictive provisions of an employment contract were upheld. In these cases, however, the employee, by reason of the nature of his activities, was placed in a position of authority with access to business records enabling him to pirate the business of his former employer. In the Anderson case the employee upon terminating his employment immediately began making use of policy expiration dates to write policies for clients whom he had serviced while working for the complainant. The employment contract here involved was of an entirely different nature. Defendant merely transported and handed the products of his employer to the customer whose identity changed from time to time and who bought because he liked the product—not because he reposed confidence or trust in the salesman.

■ Each case involving contracts in restraint of competition such as here involved must stand or fall on its own peculiar facts and before granting the extraordinary process of injunction a court of equity should balance the harm flowing from the granting or withholding of injunctive relief. Greene County Tire & Supply, Inc. v. Spurlin, 207 Tenn. 189, 338 S.W.2d 597; Herbert v. W. G. Bush & Co., 42 Tenn.App. 1, 298 S.W.2d 747.

■ Generally, injunctive relief is denied on the ground enforcement is not reasonably necessary to protect the business of the employer where the employment requires no special skill or competence and the work can be done about as well by another employee of average competence. On this theory house to house canvassers are held to fall within the category where injunctive relief will be denied. Interstate Tea Co. v. Alt, 271 N.Y. 76, 2 N.E.2d 51; Horn Pond Ice Co. v. Pearson, 267 Mass. 256, 166 N.E. 640; McCluer v. Super Maïd Cook-Ware, 10 Cir., 62 F.2d 426.

We are not unaware of cases enforcing restrictive agreements against employees on laundry and milk routes, Anno. 43 A.L.R.2d 166 et seq. In such activities, however, the route salesman is the alter ego of his employer dealing daily with the same customers on a basis of trust, good will and confidence. The salesman in such cases has a list of customers which would be of value to a competitor and enable the salesman to pirate business from his former employer. Two such cases are cited in Di-Deeland, Inc. v. Colvin, 208 Tenn. 551, 347 S.W.2d 483, here strongly relied upon by complainant.

In that case Colvin had worked for the complainant in its laundry business for a number of years. In his contract

of employment he agreed, as stated in the opinion, "not to go into a competing business within six months after the termination of said employment within a radius of forty-five miles from the employer's plant in Chattanooga. He further agreed that he would not give or divulge to others the secrets or experience or things of that kind that he had learned by reason of his long association in this business, and that he would not directly or indirectly solicit or attempt to solicit any of the customers of Di-Deeland."

The opinion cites and relies upon Matthews v. Barnes, supra, 155 Tenn. 110, 293 S.W. 993, as sustaining the conclusion that the contract should be specifically enforced, stating that the two cases were "parallel". Matthews v. Barnes involved an employee in a managerial position possessing trade secrets. We assume Colvin was in a similar position and also infer from the opinion that he did not seek other employment but formed a competing business and began to solicit customers of his former employer.

In the present case, while the terms of the agreement were reasonable as to time and territory, the services of defendant involved nothing of a confidential nature, i. e., no "trade secrets" are involved and complainants' business does not reasonably require the relief sought by the bill.

Affirmed with costs adjudged to complainant and surety on its appeal bond.

Cooper and Parrott, JJ., concur.