**Melvin A. LEVY, d/b/a Beltone of Knoxville, Petitioner-Appellant,**

v.

**Jerry Brice BAKER, d/b/a Baker Hearing Aid Service, Defendant-Appellee.**

**Jerry Brice BAKER, Petitioner,**

v.

**Melvin A. LEVY et al., Respondents.**

Court of Appeals of Tennessee, Western Section.

Aug. 14, 1973.

Calvin N. Taylor, Knoxville, for appellant Melvin A. Levy, d/b/a Beltone of Knoxville.

Carey E. Garrett and L. B. Bolt, Jr., Knoxville, for appellee Jerry Brice Baker.

David Pack, Atty. Gen., and Alex B. Shipley, Jr., Asst. Atty. Gen., for respondents Tennessee Bd. of Hearing Aid Dispensers.

CARNEY, Presiding Judge.

The plaintiff below, Melvin A. Levy, d/b/a Beltone of Knoxville, has appealed from a decree of the Chancery Court of Knox County dismissing his petition seeking to enjoin the defendant, Jerry Brice Baker, from selling hearing aids in competition with the plaintiff, Melvin A. Levy, for a period of two years from April, 1972. The plaintiff, Melvin A. Levy, does business as Beltone of Knoxville with his principal business office located in Knoxville, Tennessee. He has the exclusive franchise to sell Beltone Hearing Aids in some fifteen or twenty counties in East Tennessee and three counties in Southwest Virginia, namely, Lee, Scott, and Washington Counties. The defendant, Jerry Baker, resigned as salesman for plaintiff Levy in April, 1972, and went immediately in competition with Levy setting up an office in Maryville, Blount County, Tennessee, and selling Fidelity and Audivox Hearing Aids. Later he dropped Fidelity and took a franchise for Odocon Hearing Aids.

On October 20, 1970, the defendant Baker, who was then 32 years of age, a resident of Maryville, Tennessee, a graduate of the University of Tennessee, and whose previous experience as a traveling salesman was selling drugs to doctors, applied for and received employment with the plaintiff, Melvin A. Levy. Mr. Baker had had no previous experience with hearing aids.

Plaintiff Levy, as a condition to Baker's employment, insisted upon his signing a written agreement containing a non-competitive provision which prohibited Baker from competing in the same type of business for a period of two years after the termination of employment in the entire franchise area in which the plaintiff Levy sold Beltone Hearing Aids. Plaintiff Levy spent about $4,000.00 training the defendant Baker to be a competent hearing aid salesman. Such training consisted of direct on-the-job supervision, audio-visual films prepared by Beltone, a Beltone Training Manual, and a home study course from the National Hearing Aid Society. Mr. Baker was taught how to fit hearing aids, the nature of sound, the effect of amplification, and the process of measuring hearing losses. As a direct result of the defendant's training the defendant Baker received a permanent license "to dispense hearing aids" from the Tennessee State Board of Hearing Aid Dispensers.

Baker sold something over 100 hearing aids for approximately $40,000.00 gross sales during his employment with Levy. These sales were made in twelve counties of East Tennessee. During the time the defendant Baker worked for Mr. Levy he had access to a list of Mr. Levy's customers as well as a list of "leads" or potential customers. Hearing aids are usually replaced every four years.

Mr. Levy, in cooperation with Beltone, did extensive advertising by direct mail, newspaper, radio, and television asking people who were hard of hearing to send in their names for interviews, etc. Mr. Baker testified that he had not called on Levy customers but that a number of the people on Mr. Levy's list of potential customers were also listed as potential customers by other makers of hearing aids including the ones sold by Mr. Baker. Mr. Baker admitted that he was using the same telephone number in his new business on his business card that he had used while representing the plaintiff and Beltone.

His Honor the Chancellor found that since Mr. Baker had domestic responsibilities toward his father and mother who lived in Blount County and who were not well, the hardship of an injunction against defendant would outweigh the benefits that would inure to the plaintiff if the injunction were granted. His Honor the Chancellor predicated his decision upon the case of *Kaset v. Combs*, (1968), 58 Tenn.App. 559, 434 S.W.2d 838.

In our opinion the facts of the instant case are entirely distinguishable from those obtaining in the *Kaset* case and the rule of the *Kaset* case should not be applied in the instant case.

In the *Kaset* case the employer operated a catering service in Chattanooga furnishing food and drink primarily to establishments during their coffee break rest periods and lunch hours. The defendant employee operated one of complainant's mobile catering trucks for about six and one-half years before quitting. He had signed an agreement not to work for any other employer engaged in similar business within a radius of 35 miles from Chattanooga except with the consent of the employer in writing. In the *Kaset* case the employee, after his employment was terminated, tried to make a living by operating a beer tavern and cafe but was unsuccessful. Some four months later he accepted employment with Blaylock, a competitor of the complainants. Both the Chancellor and the Court of Appeals found that the identity or personality of the driver of the caterer's truck had little to do with sales and that it was the quality of the product that largely controlled the sales. No trade secrets were involved. The employee tried to get employment in Rome, Georgia, outside the 35-mile radius but found that his two invalid children could not get adequate schooling in Rome.

■ In the case at bar the employee Baker is a college graduate; he fully understood the written agreement which he signed; he received specialized training worth approximately $4,000.00 from the plaintiff Levy and also received his permanent license to sell hearing aids as a direct result of much training. He has made no effort to go into any other kind of business nor obtain any other employment. He was a drug salesman prior to receiving the specialized training under the plaintiff and there is no evidence that he has even inquired about his former employment or a similar job during the two-year period provided for in his written contract. The preponderance of the evidence is that the defendant is now interested only in going into business in competition with his former employer which he agreed in writing not to do.

We hold that the defendant Baker stands on an entirely different plane from the defendant Combs who drove the catering truck in *Kaset v. Combs*, supra. In the hearing aid business the ability of a salesman to fit hearing aids, his knowledge of the product he sells, his knowledge of hearing aids in general, along with his personality and enthusiasm are all important factors in the sale of hearing aids, whereas the driver of a catering truck has very little to do with the sale of his product. To permit the defendant Baker to renege on his solemn written contract would mean that the plaintiff Levy and other employers similarly situated would have no protection against competition from men upon whom they spent several thousand dollars training as employees.

It would be inequitable to the plaintiff Levy and contrary to the public interest to establish such a precedent. Again, we differentiate the present case from *Kaset v. Combs* in that in the *Kaset* case the employee truck driver Combs had two invalid children who could not get adequate schooling in another town, whereas the defendant Baker is unmarried, though his father and mother, who live in the same town with him, have had a heart attack and high blood pressure respectively. There is no showing of any inability on the part of the defendant Baker to move outside of the plaintiff's franchise area and operate his hearing aid service in other areas such as Middle or

West Tennessee, North Georgia, or Western North Carolina. His brother is a pharmacist in nearby Madisonville, Tennessee, and can keep reasonably close touch with the father and mother.

Upon the authority of *Ramsey v. Mutual Supply Company*, (1968), 58 Tenn.App. 164, 427 S.W.2d 849, we sustain the plaintiff's assignments of error and reverse the decree of the lower Court. The cause will be remanded for entry of a decree enjoining the defendant Baker from engaging in the hearing aid business in any of the counties covered by the plaintiff Levy's Beltone franchise for a period of two years from the date of the entry of the decree below.

■ In the case of *Baker v. Tennessee Board of Hearing Aid Dispensers*, consolidated for appeal with *Levy v. Baker*, the appellee Baker sought an injunction to prevent the Board of Hearing Aid Dispensers from taking any administrative action against the defendant Baker. The Chancellor dismissed the petition for injunctive relief from which the petitioner Baker has appealed. On the authority of *Insurance Company v. Craig*, (1901), 106 Tenn. 621, 62 S.W. 155, and *Davis v. Fentress County Board of Education*, 218 Tenn. 280, 402 S.W.2d 873, we uphold the action of His Honor the Chancellor in dismissing said petition. We also sustain the action of the Chancellor for the further reason that the Board of Hearing Aid Dispensers has taken no affirmative action on the complaint filed against the plaintiff Baker.

The appellee-appellant Baker is taxed with the costs in the lower Court and in this Court.

MATHERNE and NEARN, JJ., concur.