WILLIAM B. TANNER COMPANY, INC., Plaintiff-Appellee,

v.

James C. TAYLOR, Defendant-Appellant,

and

Sweep Productions, Inc., Defendant.

Court of Appeals of Tennessee, Western Section.

July 1, 1974.

Certiorari Denied Dec. 2, 1974.

James S. Cox, Krivcher & Cox, Memphis, for defendant-appellant.

James E. Irwin, Memphis, for plaintiff-appellee.

CARNEY, Presiding Judge.

## PLAINTIFF'S MOTION FOR DIMINUTION OF THE RECORD

The plaintiff, William B. Tanner Company, Inc., has filed a motion suggesting diminution of the record along with a stenographic copy of the argument and remarks of counsel and comments of the Chancellor upon the trial below and has requested that such stenographic copy be made part of the record in this Court. This motion is not well-taken and must be denied. Statements of counsel and of the trial judge or chancellor as well as special instructions to the jury are not part of the

technical record unless contained in a bill of exceptions or entered upon the minutes of the Court and signed by the trial judge or chancellor. In law cases a stipulation of fact must either be entered on the minutes or contained in a bill of exceptions to become part of the record. See *Lyon v. Crabtree*, 1932, 16 Tenn.App. 42, 64 S.W.2d 24; *Cohen v. Cook*, 62 Tenn.App. 292, 462 S.W.2d 502; *Standard Life v. Adams*, 1939, 174 Tenn. 405, 126 S.W.2d 311.

Therefore, we have not considered the stenographic report.

## DISCRETIONARY APPEAL OF DEFENDANT, JAMES C. TAYLOR

The appeal is from an order of the Chancery Court denying the motion of defendant, James C. Taylor, to dissolve, or modify, or clarify a temporary injunction and from the order of the Chancellor overruling the defendant's motion for a summary judgment.

The injunction complained of restrained and enjoined the defendant, James C. Taylor, from "selling or offering to sell, either directly or indirectly, musical reproductions for advertising purposes to radio or television stations, or their customers, pending further orders of this Court." The plaintiff, William B. Tanner Company, Inc., defendant's former employer, was required to post a $50,000 bond before the issuance of the temporary injunction.

The plaintiff, William B. Tanner Company, Inc., is the same company formerly known as Pepper & Tanner, Inc. For the past ten years it has been engaged in the radio, television, communications, and advertising industries with offices in Memphis, Tennessee. The complaint averred that as part of its services to the radio and television industry, the plaintiff employs writers, musicians, sound technicians, singers, and production personnel to create and produce musical materials for sale and distribution to radio and television stations and other clientele throughout the fifty states and foreign countries; and that the plaintiff has developed and trained writers, musicians, sound technicians, and production personnel in the specialized fields of creating and producing commercial productions particularly adapted to radio and television use; and that it has established a nationwide sales force to present these specialized productions to the radio and television industry and that the training and education of sales personnel to present these productions has been a great expense to the complainant.

Defendant James C. Taylor was hired as sales manager of the plaintiff corporation on January 25, 1971, by written contract for a three-year period at an annual salary of $18,000 plus a sales bonus of two percent of all net sales of the Concept Division, less kills, in excess of $750,000 annually provided the sales to earnings ratio is maintained at not more than twenty-five percent. Mr. Taylor was also to receive a personal bonus of one percent of all personal net sales made by him and his assistants in the office, less kills, in excess of $75,000 per month. Other fringe benefits included a stock option.

On February 16, 1972, the defendant, James C. Taylor, sent a note to the president, William B. Tanner, stating that he had to have more money; that he had turned down $2,500 a month from two other companies in Memphis; that he wanted $2,000 per month plus $4,000 bonus for 1971. Effective March 1, 1972, his salary was increased to $2,000 per month for a total of $6,000 annual raise. On March 20, 1973, the defendant, Taylor, sent an informal note to Mr. Tanner saying he was quitting. Mr. Tanner, the president, refused to accept the resignation. On March 21, 1973, the defendant, Taylor, submitted a typewritten letter of resignation but he did not cease work until April 10, 1973. Prior to March 20, 1973, the defendant had agreed orally to go to work for the defendant, Sweep Productions, Inc., a competitive business.

On April 19, 1973, John McFarlane and Ted Slusher, former employees of William B. Tanner Company, also in the sales department, quit their employment and were employed by the defendant, James C. Taylor, on behalf of Sweep Productions, Inc. at the same salary they had been receiving at William B. Tanner Company. Within a few days McFarlane and Slusher were rehired by William B. Tanner Company at increased salaries.

The duties of the defendant, James C. Taylor, as employee of Sweep Productions, Inc., are substantially the same as his duties as sales manager of William B. Tanner Company, Inc. Taylor's contract of employment with Tanner expressly prohibited him from engaging in a similar business for two years and provided that Tanner Company might enforce the contract by injunctive relief. We quote paragraphs XI and XII of the contract as follows:

### "XI. AGREEMENT NOT TO COMPETE

Jim Taylor further agrees that he will not engage as an employer, employee, principal, agent or otherwise, directly or indirectly for a period of two (2) years following the termination of his employment hereunder, in a similar business to that of the Company in any place in the United States, Canada or Mexico. If he does so in violation hereunder, the Company shall be entitled to an injunction by any competent court of equity, enjoining and restraining him and each and every other person concerned from continuance of such employment, service or other act prohibited hereby.

### XII. PRIVILEGED RECORDS

Jim Taylor further agrees that for and during the entire term of his employment any information, data, figures, sales figures, projections, estimates, customer lists, tax records, personnel history, accounting procedures, promotions, etc., shall be considered and kept as the private and privileged records of the Company and will not be divulged to any firm, individual or institution except on the direct authorization of the President of the Company. Further, that upon termination of this Agreement for any cause, the Employee agrees that he will continue to treat as private and privileged any information, data, figures, projections, estimates, customer lists, tax records, personnel history, accounting procedures, etc., and will not release any such information to any person, firm or institution, either by statement, deposition or as a witness, except upon direct written authority of the President of the Company and that the Company shall be entitled to an injunction by any competent court to enjoin and restrain the unauthorized disclosure of such information."

The original complaint of William B. Tanner Company alleged that the defendant, Sweep Productions, Inc., induced and persuaded James C. Taylor, sales manager of its Concept Division, to breach his employment contract with William B. Tanner Company, Inc. and to work for Sweep Productions, Inc. in direct competition with plaintiff Corporation. The complaint further averred that defendants, Sweep Productions, Inc. and James C. Taylor, did unlawfully conspire and scheme to pirate away other trained personnel of the plaintiff, William B. Tanner Company, Inc., and to unlawfully obtain business secrets, customer lists, and other confidential information relating to the plaintiff's business and its customers.

The complaint charged the defendants with violation of the following Code sections:

T.C.A. Section 69–101

"Trusts and combinations lessening competition or controlling prices unlawful and void.—All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domes-

tic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void."

T.C.A. Section 47–15–113

"Procurement of breach of contracts unlawful—Treble damages.—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of said contract; and the party injured by such breach may bring his suit for said breach and for such damages."

T.C.A. Sections 50–201 and 50–202

"50–201. Enticing away employees— Liability.—It shall be unlawful for any person, knowingly, to hire, contract with, decoy or entice away, directly or indirectly, any one, who is at the time under contract or in the employ of another; and any person so under contract or employ of another, leaving his employ without good and sufficient cause, before the expiration of the time for which he was employed, shall forfeit to the employer all sums due for service already rendered, and be liable for such other damages the employer may reasonably sustain by such violation of contract.

50–202. Penalty for enticing—Damages.—Any person violating the provisions of the first clause of Sec. 50–201 shall be liable to the party who originally was entitled to the services of said employee, by virtue of a previous contract, for such damages as he may reasonably sustain by the loss of the labor of said employee; and, whether he had knowledge of an existing contract or not, if he fails or refuses to discharge the person so hired, or to pay such damages as the original employer may reasonably claim, after he has been notified that the person is under contract, or has violated the contract with such other person, which amount shall be ascertained, and the collection enforced by action for damages before any court or justice of the peace of the county where said violation occurs, or the party violating said action may reside."

Writs of injunction, both temporary and permanent, to restrain the defendant, James C. Taylor, from engaging in direct or indirect competition with William B. Tanner Company, Inc. for a period of two years from and after April 20, 1973, as set out in his contract, and to enjoin and restrain James C. Taylor from the use, appropriation, discovery or delivery of the contents of any materials, information, clients lists, productions, or privileged data received by James C. Taylor while in the employment of William B. Tanner Company, Inc. were prayed for.

The complaint also sought an injunction both temporary and permanent against defendant Sweep Productions from engaging in unfair competitive practices and to enjoin it from employing James C. Taylor to engage in direct or indirect competition with William B. Tanner Company, Inc. and to enjoin Sweep Productions, Inc. from using any trade secrets or materials obtained from employees of the complainant. The complaint also sought the recovery of $500,-000 actual damages and $500,000 punitive damages against both defendants, James C. Taylor and Sweep Productions, Inc.

After a hearing the Chancellor refused to issue an injunction against defendant Sweep Productions, Inc. but did issue the temporary injunction against the defendant, James C. Taylor, as above set out. Thereupon, the defendant, James C. Taylor, filed a motion to dissolve or in the alterna-

tive to modify the temporary injunction and also filed a motion for summary judgment.

The Chancellor heard and considered affidavits in support of and in opposition to said motions. He overruled all defendant's motions from which the appeal was granted to this Court.

Upon this appeal the defendant, Taylor, insists: (1) that paragraph XI of the employment contract, "Agreement Not to Compete," was so broad, excessive and oppressive as to render the agreement unenforceable; (2) that paragraph XII of the contract, "Privileged Records," is void because in contravention of public policy in that it requires the defendant to suppress evidence and obstruct justice and subjects the defendant to liability for doing that which he can be compelled by law to do, to-wit, testify under oath, regardless of whether he has the authority of the president of the company or not; (3) that since there is no severability clause in the contract and since paragraph XI is unenforceable and paragraph XII is illegal, the entire contract is unenforceable; (4) that he was justified in quitting his position with the plaintiff because of intolerable working conditions, to-wit, his telephone calls were monitored at the office and mail addressed to him at the office was opened and read by his employers.

We turn first to the assignment that paragraph XI of the contract, the Agreement Not to Compete, is void and unenforceable. Tennessee Courts have construed similar contracts in several cases. In the very fine opinion of Presiding Judge McAmis in the case of *Kaset, et al. v. Combs, et al.*, 1968, 58 Tenn.App. 559, 434 S.W.2d 838, many of the cases construing such restrictive contracts are discussed. The general rule prevailing in Tennessee is stated by Judge McAmis as follows:

> "Where such restrictive contracts are reasonable as to territory and time, where a violation would result in serious damage or injury to the employer and impose no undue hardship upon the employee a court of equity will enjoin a violation of the restrictive provisions of the employment contract. *Fed. Mut. Imp. & Hdw. Ins. Co. v. Anderson*, 49 Tenn.App. 124, 351 S.W.2d 411, and cases cited.

> 'Agreements in restraint of trade, such as covenants restricting competition, are not invalid per se. Although disfavored by law, such agreements are valid and will be enforced, provided they are deemed reasonable under the particular circumstances.' *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361."

The defendant Taylor insists that the restrictive covenant is unreasonable as to territory because there are 6,000 radio stations in the United States, Canada, and Mexico and that William B. Tanner Company only does business with something over 200 of them at the present time. Tanner Company contended that it does business in 48 states.

Defendant Taylor, as sales manager, had access to lists of every radio station with whom Tanner had done business or sought to do business including lists and data relating to customers of the radio station for whom advertisements were sold. He had peculiar knowledge of the prices charged, the nature of the contracts, etc. He was hired and trained to become sales manager at considerable expense to his employer. The restrictive agreement not to compete was clear and unambiguous at the time he signed the contract.

With reference to the area covered, if the defendant had, in fact, moved to Canada or Mexico or some remote part of the United States where plaintiff did no business and defendant was seeking to be relieved of an injunction against competing in a particular area, the defendant's position would be greatly different from his present posture. Defendant remained in Memphis and admittedly went into direct competition with plaintiff immediately upon leaving plaintiff's employ. He consulted with one or more lawyers prior to the time he terminat-

ed his employment relative to the validity of paragraphs XI and XII of the contract. He contracted with plaintiff's competition while still employed by plaintiff.

In view of the extensive area covered by the employer's business, paragraph XI is not invalid as being unreasonably broad in this respect. See *De Long Corporation v. Lucas,* D.C.N.Y., 176 F.Supp. 104, affirmed, 2 Cir., 278 F.2d 804, certiorari denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58.

As to the time element of two years, we note that the Chancellor has issued only a temporary injunction against defendant. However, we hold that the restriction against competition for two years is a reasonable period of time under the facts of this case.

■ Turning now to paragraph XII, Privileged Records, we are cited to no case by the appellant which holds that covenants similar to that described in paragraph XII are illegal. It is contended by appellant that such a contract is against public policy because it requires him to conceal evidence and obstruct justice. We disagree. If a court of competent jurisdiction should order the defendant to release such information in a proper case, then it is inconceivable that such or any other court could or would attempt to hold the defendant in violation of the contract for obeying the orders of such court. The contract only prohibits the defendant from voluntarily releasing or divulging the trade secrets he obtained while in the employ of plaintiff to plaintiff's damage. See *Arkansas Dailies v. Dan,* 36 Tenn. App. 663, 260 S.W.2d 290.

There is no contention that defendant is unable to earn a living for his family in any other field of endeavor. Unquestionably, he is a man of considerable ability and able to command a good salary in more than one field.

To enforce the covenants in paragraphs XI and XII quoted above will not work an undue hardship on the defendant Taylor. It will require him to do only what he solemnly contracted to do. To fail to enforce them, will give plaintiff's competition, Sweep Productions, Inc., an unfair advantage over the plaintiff; full information about plaintiff's contract, its personnel, its manner of operation, plans for expansion and possibly others; all by means of defendant's wilful breach of his written contract of employment with plaintiff.

■ Therefore, the Chancellor will not be held in error for refusing to dissolve or modify the injunction. There is a $50,000 bond to protect the defendant if plaintiff fails to prove its case.

The assignments of error relating to paragraphs XI and XII are respectfully overruled.

■ Finally, defendant contends the Chancellor erred in failing to award him summary judgment because plaintiff's conduct made defendant's further employment intolerable. Mr. Tanner made affidavit that his company spent $250,000 per year for WATS telephone service; that all personnel including defendant knew the telephone calls and mail were monitored; that they had advised all personnel including defendant Taylor that they should use the telephone for business only and should have personal mail sent to their residences.

Defendant never complained to President Tanner or anyone about the monitored phone calls or the monitored mail. Affidavits show clearly that defendant did not quit for these reasons. He quit to make more money from and probably to become an official of plaintiff's competitor. The trade secrets he held were a strong factor in defendant's getting the better job. On the record before this Court, defendant has not played fair with his employer. The Chancellor correctly overruled defendant's motion for summary judgment.

The assignments of error are all overruled; the appeal is dismissed; the decrees of the lower Court are affirmed and the cause remanded to the Chancery Court for further proceedings consistent with this opinion.

The cost of this appeal is taxed to defendant. The costs in the lower Court will be adjudicated by the Chancellor.

MATHERNE and NEARN, JJ., concur.