# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 27, 2012 Session

## LEROY J. HUMPHRIES, ET AL. v. NICOLAS C. MINBIOLE, ET AL.

**Direct Appeal from the Chancery Court for DeKalb County**
**No. 2009105      Ronald Thurman, Chancellor**

---

**No. M2011-00008-COA-R3-CV - Filed November 8, 2012**

---

This appeal involves a dispute between adjacent landowners over Defendants' installation of a private water line within a right-of-way easement across the Plaintiffs' property. Following a bench trial, the trial court concluded that Defendants' private water line trespassed on Plaintiffs' property. Further, the trial court ordered that the Defendants would be incarcerated if they did not remove the water line and return Plaintiffs' property to its previous condition within thirty (30) days. Defendants appealed. We affirm in part and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Vacated in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Robin J. Gordon, Nashville, Tennessee, for the appellants, Nicolas C. Minbiole and Anna A. Minbiole.

John A. Beam, III, and Andrew Cameron, Nashville, Tennessee, for the appellees, Leroy J. Humphries and CNMC Land and Livestock Corporation.

## OPINION

### I. Background and Procedural History

Leroy J. Humphries and his corporation, CNMC Land and Livestock Corporation (collectively as "Humphries"), own a substantial amount of rural farmland along Hurricane Ridge Road in DeKalb County, Tennessee. Hurricane Ridge Road is a county road created by implication that runs north along a ridge and dead ends at the top of a ridge before

reaching Center Hill Lake. In 2003, Humphries and two neighboring property owners each conveyed a twenty (20) foot right-of-way easement across their respective properties to DeKalb County ("the County") for "highway purposes." The intent of the landowners in conveying the easements to the County was for the extension of Hurricane Ridge Road.

In June 2009, Nicolas C. Minbiole and Anna C. Minbiole ("the Minbioles") purchased a sixty-eight (68) acre property adjoining Humphries' property. The Minbioles warranty deed referenced an easement for ingress and egress to their land from Hurricane Ridge Road across Humphries' property. Although the Minbioles believed their land had access to public water and electricity, it did not. Therefore, after considering multiple options, the Minbioles hired a contractor, Richard Hayes ("Mr. Hayes"), to install a two-inch water line along the County's right-of-way easement across Humphries' property in order to connect with the main public water line approximately 1.1 miles down Hurricane Ridge Road. Before the project began, Mr. Hayes allegedly received permission from the County Superintendent of Roads to install the Minbioles' water line within the County's right-of-way easement.

Upon learning of the Minbioles' plan, Humphries objected to the installation of the water line within the County's right-of-way easement. Despite Humphries' objection, the Minbioles instructed Mr. Hayes to commence construction of their water line. On August 31, 2009, counsel for Humphries sent a cease and desist letter to the Minbioles. Nevertheless, construction of the Minbioles' water line continued. As a result, on September 4, 2009, Humphries filed a complaint in the Chancery Court of DeKalb County seeking to enjoin further installation of the Minbioles' water line. The trial court immediately issued a restraining order enjoining the Minbioles and Mr. Hayes from trespassing and installing the water line. Notwithstanding the restraining order, construction of the water line continued. Later that day, on September 4, 2009, Humphries filed a motion for contempt of court for violations of the restraining order. Shortly thereafter, Mr. Hayes completed the installation of the Minbioles' water line.

On October 2, 2009, the trial court agreed to hear Humphries' motion for contempt together with a hearing on the merits of their complaint. Thereafter, on November 19, 2009, Humphries filed an amended complaint further alleging trespass, private nuisance, and contempt of court. On January 19, 2010, the trial court entered an order requiring a judicial settlement conference in which the parties were to obtain all information necessary to evaluate the case, including any expert reports. Subsequently, on September 7, 2010, after the Minbioles failed to attend the judicial settlement conference as previously ordered, the trial court entered an order requiring the Minbioles to pay reasonable costs and fees to Humphries.

On November 15, 2010, a bench trial was conducted in this matter. At the conclusion

of the trial, the trial court concluded that the Minbioles' private water line trespassed on Humphries' property. In light of the fact that the Minbioles "thumbed their nose at the legal process", the trial court ordered them to remove the water line within thirty (30) days or else they would be incarcerated. On December 15, 2010, the trial court entered an order memorializing its ruling. Thereafter, the Minbioles filed a motion to stay the judgment pending appeal, and later filed a motion pursuant to Rule 60.01 of the Tennessee Rules of Civil Procedure in which they asked the trial court to clarify the language in its final order stating that the Minbioles were found in contempt of court. On February 22, 2010, the trial court entered an order granting the Minbioles' motion to stay the judgment pending appeal. Further, the trial court granted the Minbioles' Rule 60.01 motion and modified the final order, striking the language from the order which stated that the Minbioles were found in contempt of court. The Minbioles timely filed a notice of appeal to this Court.[1]

## II. Issues Presented

We substantially restate and consolidate the issues presented on appeal as follows:

(1)    Whether the trial court erred in finding that the Minbioles' water line trespassed on Humphries' property, and

(2)    Whether the trial court erred by ordering removal of the water line.

## III. Standard of Review

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). If the trial court fails to make a specific finding of fact on a particular matter, we review the facts in the record under a purely *de novo* standard to determine where the preponderance of the evidence lies. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing *Fields v. State*, 40 S.W.3d 450, 457 n. 5 (Tenn. 2001)). We afford great deference to the trial court's determinations on the credibility of witnesses. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011); *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). We review the trial court's conclusions on matters of law *de novo,* with no presumption of correctness. Tenn. R. App. P. 13(d). Likewise, our review of the trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

---

[1]Mr. Hayes did not file a notice of appeal to this Court, and thus, is not a party to this appeal.

## IV. Analysis

## A. Trespass

We begin by addressing the Minbioles' argument that the trial court erred in finding that their water line trespassed on Humphries' property. The Minbioles argue that, because the installation of public utilities is a permissible use of a right-of-way easement for "highway purposes", the installation of their water line within the County's easement did not trespass on Humphries' property. On the other hand, while conceding that the County's right-of-way easement for "highway purposes" could be used for the installation of public utilities, Humphries argues that the Minbioles did not have authorization to install their private water line within the County's easement. Further, assuming that the Minbioles had authorization to use the County's easement, Humphries argues that the Minbioles exceeded the permissible uses of the easement by installing a private water line that only serviced their property. As a result, Humphries argues that the trial court correctly determined that the Minbioles' private water line trespassed on their property.

As this Court discussed in *Cellco Partnership v. Shelby County*, 172 S.W.3d 574 (Tenn. Ct. App. 2005):

> We begin our analysis by noting that "[t]he range of permissible uses of any particular easement is in the first instance defined by the circumstances surrounding the creation of that easement; its use is limited to the purposes for which it was created." 28A C.J.S. Easements § 159 (1996). Our case law adopts this general proposition, providing that:
>
>> "The use of an easement must be confined strictly to the purposes for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." 17 Am. Jur. 996, sec. 98.
>>
>> . . . .
>>
>> "In other words, an easement appurtenant to a dominant tenement can be used only for the purposes of that tenement; it is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation,

prescription, or implication." 9 R.C.L., 786, sec. 43; Jones on Easements, secs. 99 and 100.

"A principle which underlies the use of all easements is that the owner thereof cannot materially increase the burden of it upon the servient estate, nor impose a new and additional burden thereon. . . . It may be said in general that if an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use." 9 R.C.L., 790, sec. 47; Jones on Easements, secs. 99 and 100.

*Adams v. Winnett*, 25 Tenn. App. 276, 156 S.W.2d 353, 357 (1941); *see also McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App.1991).

*Id.* at 595-96. As this Court further explained in *Cellco*, "[w]e recognize that, '[w]hile the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder.'" *Id.* at 598 (quoting *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)).

In the case at bar, the County's right-of-way easement was intended for "highway purposes." It is well-established in Tennessee that:

When land has been dedicated or condemned for street purposes, the city has the right not only to use the surface of the ground, but also may go beneath the surface, or above it, so far as may be necessary to adapt to its proper use the land so devoted to the service of the public.

*Frazier v. East Tennessee Telephone Co.*, 115 Tenn. 416, 90 S.W. 620, 621-22 (1906) ("[i]t is held generally in the courts of the country that electric light poles and wires, gas pipes, and lamp posts for *highway purposes*, sewer pipes, and water pipes do not [constitute an additional burden.]) (emphasis added); *see also Pack v. Southern Bell Tel. & Tel. Co.*, 215 Tenn. 503, 387 S.W.2d 789, 793 (1965) ("[t]he placing of utilities upon a right-of-way is one of the proper *uses of a highway* thereby benefitting the public.) (emphasis added). Moreover, the parties concede that the County may use the dedicated right-of-way easement for the installation of public utilities for the benefit of the public.

After thoroughly reviewing the record, however, we are unable to find any credible proof that the Minbioles had authorization to install their water line within the County's

easement.[2]  Although Mr. Minbiole testified that they had permission from the County to install their water line within the easement, the trial court specifically found that the Minbioles' testimony was not credible.  In fact, the trial court stated that "there's to many holes in their testimony.  I think they have repeatedly stretched the truth and misled the Court."  While the right-of-way easement was conveyed to "[the County], its successors and assigns," there is no evidence in the record of any conveyance or assignment from the County to the Minbioles.  The only proof contained within the record consists of a handwritten document, purportedly from the County Superintendent of Roads, granting the Minbioles permission to install their water line within the County's easement.  However, when questioned by the trial court about the fact that the document was dated four months before the Minbioles contracted with Mr. Hayes to install their water line, Mr. Hayes admitted that the document was from a project that he worked on previously.  Moreover, during oral argument, counsel for the Minbioles admitted that the handwritten document in the record was from one of Mr. Hayes' previous projects, unrelated to the Minbioles' water line. Therefore, after reviewing the record and giving due deference to the trial court's credibility determinations, we conclude that the Minbioles did not have authorization to install their water line within the County's right-of-way easement across Humphries' property.

Assuming for the sake of argument that the Minbioles had permission from the County, we agree with the trial court's conclusion that their private water line trespassed on Humphries' property.  As noted above, the County's right-of-way easement for "highway purposes" permits the use of the easement for the installation of public utilities.  It is undeniable in this case, however, that the Minbioles' two-inch water line services only their property for their own benefit.  According to the parties, the County does not install its own water lines, but instead takes over privately installed water lines if it finds them to be acceptable for servicing the surrounding area. Mr. Minbiole, however, testified that he knew the County would only accept a six-inch water line along Hurricane Ridge Road.  Therefore, the Minbioles' knew that the installation of their two-inch water line would never be utilized to service the public.  Even if the Minbioles did receive authorization from the County, which we do not find, their water line constitutes an inconsistent use of the County's right-of-way easement for "highway purposes."  *See Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 598 (Tenn. Ct. App. 2005) ("'[w]hile the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder.'") (quoting *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)); *Adams v. Winnett*, 25 Tenn. App. 276, 156 S.W.2d 353, 357 (1941) ("It may be said in general that if an easement is put to any use inconsistent with the purpose for which it was granted, the grantee becomes a trespasser to the extent of the unauthorized use.") (citations omitted).  Accordingly, we conclude that the

---

[2]The trial court made no specific findings regarding the alleged permission given by the County.

Minbioles' private water line trespassed on Humphries property.

## B. Injunctive Relief

Finally, we address the Minbioles' argument that the trial court erred by ordering removal of the water line as opposed to damages. A trial court's decision to grant or deny permanent injunctive relief is reviewed under an abuse of discretion standard. *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009); *Bd. of Comm'rs of Roane County v. Parker*, 88 S.W.3d 916, 919 (Tenn. Ct. App. 2002); *Medtronic, Inc. v. NuVasive, Inc.*, W2002–01642–COA–R3–CV, 2003 WL 21998480, at *10 (Tenn. Ct. App. Aug. 20, 2003). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

Regarding the proper relief to award in light of the Minbioles' trespass, the trial court concluded that:

[The Minbioles] will remove this water line within 30 days. If it is not removed within 30 days, they will be incarcerated until such time as it is removed. That is through civil contempt.

The reason the Court is going to impose that is that I think that the [Minbioles] have ignored – I'm not going to find them in contempt as far as criminal contempt, but I think they've thumbed their nose at the legal process, both with Judge Maddux and with this Court. I think that's in the record sufficient for me to believe that.

Under civil contempt, the defendant has a right to cure it. They've just got to do what the Court orders. If they don't, then there's the carrot and stick approach, and I hope we don't get to that point.

The [Minbioles] will put the property back in the same shape they found it. That should put [Humphries] back into shape. And as such, I don't award any monetary damages. That's the other relief. I can either give you money damages, or I can put you back in the place you were. And that's what will happen.

As this Court explained in *Vintage Health Resources, Inc. v. Guiangan*, 309 S.W.3d 448 (Tenn. Ct. App. 2009):

> When determining whether to grant injunctive relief, the trial court should consider such factors as the adequacy of other remedies, the danger that the plaintiff will suffer irreparable harm without the injunction, the benefit to the plaintiff, the harm to the defendant, and the public interest. *See Zion Hill Baptist Church v. Taylor*, No. M2002–03105–COA–R3–CV, 2004 WL 239760, at *5 (Tenn. Ct. App. Feb. 9, 2004) (citing *Union Planters' Bank & Trust Co. v. Memphis Hotel Co.*, 124 Tenn. 649, 139 S.W. 715, 718–19 (1911); *Butts v. City of S. Fulton*, 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977); *Henry County v. Summers*, 547 S.W.2d 247, 251 (Tenn. Ct. App. 1976); *Kaset v. Combs*, 58 Tenn. App. 559, 434 S.W.2d 838, 841 (1968); *Herbert v. W.G. Bush & Co.*, 42 Tenn. App. 1, 298 S.W.2d 747 (1956); 42 Am. Jur. 2d Injunctions § 14 (2000); Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 4–3(b) (2d ed. 1999)). "A court's equitable power to grant injunctions should be used sparingly, especially when the activity enjoined is not illegal, when the injunction is not requested, and when it is broader than necessary to achieve its purposes." *Kersey v. Wilson*, No. M2005–02106–COA–R3–CV, 2006 WL 3952899, at *8 (Tenn. Ct. App. Dec. 29, 2006) (citing *Earls v. Earls*, 42 S.W.3d 877 (Tenn. Ct. App. 2000); *Terry v. Terry*, No. M1999–01630–COA–R3–CV, 2000 WL 863135 (Tenn. Ct. App. June 29, 2000)).

*Id.* at 466-67.

After reviewing the record, we conclude that the trial court abused its discretion in ordering the Minbioles to remove their water line. Although it is within the discretion of the trial court to grant injunctive relief, "[d]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles. An abuse of discretion may be found when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." *Dickson v. Kriger*, 374 S.W.3d 405, 412 (Tenn. Ct. App. 2012) (citations and internal quotation marks omitted). In this instance, the trial court failed to make findings regarding the relevant factors before awarding injunctive relief. On the contrary, in an order entered before trial, the trial court concluded that there was no danger that Humphries would suffer irreparable harm because the Minbioles already installed their water line. Moreover, the only evidence in the record regarding damages was the testimony introduced through Humphries' expert witness that the land through which the Minbioles installed their water line was valued at

$1,547.60, and that the cost to install a six-inch water line along Hurricane Ridge Road through the County's easement would cost $89,180.45. No evidence was offered regarding the value of Humphries' property before and after the trespass, or the reasonable costs of restoring or repairing Humphries' property.[3] *See* 2 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 31:3 (2011 ed.) (citations omitted) ("'Irreparable injury,'. . . turns on whether there is a complete remedy at law. If there is a complete, adequate, and efficient remedy at law, the injunction is not proper. Thus, in cases where substantial redress can be afforded by the payment of money, an injunction would be improper."). Furthermore, the trial court failed to consider the potential harm to the Minbioles– their home would have no source of water if their water line was removed. While we understand the trial court's frustration with the Minbioles' actions throughout the proceedings below, this does not absolve the trial court of its duty to consider the relevant factors meant to guide its discretionary determination of whether to award injunctive relief. Therefore, we vacate the injunction and remand this cause to the trial court for further proceedings on the issue of the requested injunction.

## V. Conclusion

For the foregoing reasons, we affirm the decision of the trial court in part, vacate the injunction and remand for further proceedings consistent with this Opinion. Costs of this appeal are taxed equally to the Appellants, Nicolas C. Minbiole and Anna A. Minbiole, and their surety, and the Appellees, Leroy J. Humphries and CNMC Land and Livestock Corporation, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[3]Generally, "[t]he proper measure of damages for injury to real property is the lesser of either (1) the difference in reasonable market value of the premises immediately prior to and immediately after the injury, or (2) the cost of repairing the injury." *Simmons v. City of Murfreesboro*, No. M2008-00868-COA-R3-CV, 2009 WL 4723369, at *5 (Tenn. Ct. App. Dec. 9, 2009) (citing *Fuller v. Orkin Exterminating Co., Inc.*, 545 S.W.2d 103, 108-09 (Tenn. Ct. App. 1975); *Carson v. Waste Connections of Tenn.*, Inc., No. W2006-02019-COA-R3-CV, 2007 WL 1227470, at *6 (Tenn. Ct. App. Apr. 27, 2007)). The court may consider the reasonable restoration costs when calculating the diminished value of the property. *Fuller*, 545 S.W.2d at 108.